CITIZENS SAVINGS BANK AND TRUST CO. *v.* FITCHBURG MUTUAL
FIRE INSURANCE COMPANY.

May Term, 1913.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, and POWERS, JJ.

Opinion filed June 2, 1913.

*Law of the Case—Fire Insurance—Action on Policy—Total Loss.
—Measure of Damages—Value of Building—Rental Value
—Value of Remains—Evidence—Witnesses—Redirect Ex-
amination — Impeachment — Explanation of Statements —
Experts—Compensation as Bearing on Interest—Harmless
Error—Remarks of Counsel.*

A holding, on review of a bill of exceptions in an action on a fire in-
surance policy, that the expense of insurance is chargeable against
the rents in determining the net income of the building is the
"law of the case" as to that item on a subsequent trial of the same
action.

In an action on a fire insurance policy, where it was for the interest
of the insured to have the value appear small and the amount of
the loss large, the insured was properly allowed to show the rental
value of the building as tending to establish its cash value, and
to show that the rents received were what they should have been.

In an action on a fire insurance policy, a witness as to the value of
the property was properly allowed to consider, in forming his
opinion, a list of the rents of the property, which had been pre-
pared and furnished by the insured and sworn to as correct.

In an action on a fire insurance policy on a bank building and fixtures,
where the insured claimed a total loss, but had built on some of
the walls left standing and repaired and used some of the fixtures
of its banking rooms, the insured was properly allowed to show
in explanation that, although the property was worthless, it was
used solely to expedite the work of reconstruction for the con-
venience of the insured's business, that the walls and fixtures
were practically worthless, that it was necessary to remove and
replace several thousand brick, to incur expense in shoring up
the walls, that the use of the old walls was difficult, and that on

account of the weakened foundation the floors of the reconstructed building had settled.

In an action on a fire insurance policy on a bank building, which the insured claimed was a total loss and that it would have been better to have had the walls out of the way rather than to use them in reconstruction, as it did, the insured was properly allowed to show the condition of the walls and what was necessarily done in clearing away the ruins, including the removal of dead bodies, that it cost about $4,000 to remove the remnants not used, and to show the cost of covering to protect the public and the insured's tenants during the reconstruction and the removal of the material not used, where there was nothing to indicate that anything was done to protect the tenants that was not necessary to protect the public.

Where plaintiff's witness described the condition of the walls and what was necessarily done in clearing away the ruins, he was properly allowed further to testify that it would have been better for plaintiff to have had the building as it stood after the fire out of the way than to use it in reconstruction, as it did.

Where the insured claimed a total loss of its bank building, but had built on some of the walls left standing, and its treasurer testifying in its behalf, on cross-examination said that they had never offered the remnants for sale, and the manifest purpose of the cross-examination was to create the belief that the insured valued the remnants highly for purposes of reconstruction and immediately began to rebuild without regard to the insurer's option to rebuild and without having considered any other disposition of the remnants than to make use of them itself, the witness was properly allowed on redirect examination to testify that the insured offered to sell the property to the insurer for $5,000, the insurer to reconstruct the building.

Where the insured claimed a total loss of its bank building, but had built on some of the walls left standing, testimony of its treasurer that after the fire he and his associates looked at the walls, talked over what was best to do and decided to go to work immediately to use the walls as best they could, and that this was in accordance with his opinion, was properly admitted as against the objection that the witness was permitted to testify to the opinion of his associates as well as of himself.

Evidence that the destroyed building had the cheapest kind of finish that could be used, that the circular windows in the upper story made the building less valuable, and that the old vault used in reconstructing the building was not modern and up-to-date was admissible.

A contractor and builder who had been acquainted with the building before the fire, took part in its reconstruction, and had such knowledge of the details of the destroyed building as would necessarily be derived from an inspection of the ruins with a view to using them, though it did not appear that he expressly described them, was properly allowed to testify that it was a very low grade building.

In an action on a fire insurance policy, where it was conceded that the proofs of loss in evidence on a former trial were the same as in this, plaintiff was properly allowed to show by a certified copy of the transcript that the presiding judge while charging the jury in the former trial said that he understood that there was no question by defendant as to the loss on the personal property, and that the jury should therefore consider the amount shown by the proofs of loss as the value, and that he presumed there was no dispute as to the amount, to which one of counsel for defendant answered, "I don't think so."

In an action on a fire insurance policy, where on cross-examination of plaintiff's treasurer, and for the purpose of discrediting his testimony on direct examination as to the value of the destroyed property, applications for insurance thereon, signed by him and valuing the property very much higher than he testified, were introduced in evidence, he was properly permitted to testify on redirect examination that he signed the applications in blank, and that in his opinion the property was carried at too high a figure for the income received therefrom, and that the valuation had been reduced by charging off designated amounts, and that this was in accordance with his opinion.

In an action by a bank on a fire insurance policy, entries in its books, which were its record of matters known to and participated in by its treasurer as one of its officials, were not dependent, as corroborative of his testimony, on the hand or oath of the person who made them.

In an action on a fire insurance policy, where the destroyed building had been reconstructed, and it appeared that the interior of the

new building was of an altogether different plan and more expensive than that of the destroyed building, evidence as to the amount expended by the insured in rebuilding was not admissible to determine the value of the destroyed building.

Where it appeared on cross-examination of defendant's expert witnesses from other jurisdictions that they had no arrangement with defendant as to their compensation, plaintiff was properly allowed to elicit what they expected to charge and receive, as bearing on their interest.

Where it appeared that expert witnesses for defendant expected to charge so much, a reference to them by plaintiff's counsel in argument as being hired to attend court and testify, while not accurate, was harmless.

In an action on a fire insurance policy, where there was testimony that it would have been better for plaintiff if what was left from the fire had all been removed, a statement by plaintiff's counsel in argument that the jury would be justified in finding a total loss was only an argumentative assertion as to the effect of the testimony, and not objectionable as an appeal to the jury to ignore the cash value of the ruins, especially as plaintiff's specifications allowed defendant $5,000 for the remnants.

Where plaintiff's counsel stated in argument to the jury that none of defendant's witnesses had testified to the cash value of the property in question and defendant in excepting thereto named a witness who did so testify, whereupon plaintiff's counsel acknowledged his mistake and withdrew his statement, no error appears.

In an action on a fire insurance policy, where the charge followed defendant's request in determining the value of the ruins for the purpose of rebuilding, and permitted the allowance of a larger sum if they were worth more for some other purpose, plaintiff could not complain.

ASSUMPSIT on a fire insurance policy. The only question at issue was the amount of the defendant's liability. Trial by jury at the December Term, 1912, Caledonia County, *Waterman*, J., presiding. Verdict determining the plaintiff's loss and judgment thereon. The defendant excepted. The opinion states the case. This case has been once before in the Supreme Court. See 86 Vt. 267.

*Dunnett & Slack* for the defendant.

*Joseph Fairbanks, Harland B. Howe* and *J. W. Redmond* for the plaintiff.

MUNSON, J.   A previous trial of this case is reported in 86 Vt. 267, 84 Atl. 970.   The trial under review proceeded upon an understanding that the only matters to be determined by the jury were the actual cash value of the property at the time of the fire and the amount of the loss, and that the findings of the jury would be taken by special verdicts.   Under the provisions of the policy, it was for the plaintiff's interest to have the value of the property appear small and the amount of the loss large, while it was for the defendant's interest to have the value of the property appear large and the amount of the loss small. Nearly all the questions argued relate to matters of evidence.

It was held in the former opinion that the rental value of the building might be shown as tending to establish its actual cash value, and that the totals of the classified expenses used by the plaintiff in arriving at the net income of the building were properly received in evidence.   The list to which this holding related contained a total of the cost of insurance.   No claim was then made by the defendant which distinguished this from the other items of the list.   It is now argued that the expense of insurance is not properly chargeable against the rents, and that it was error to receive a list which contained it.   It is not necessary to inquire as to the soundness of the defendant's argument, for it is clear that the holding covering this item, made in the former decision, must remain the law of the case.

After showing the net rents received, the plaintiff was permitted to show by one of its officials that the rents were increased from time to time; that they endeavored to get, and in the opinion of the witness did get, all they could by way of rents; and that the sums received were a reasonable return for the use of the property.   If the rental of the building was to be relied upon as an evidence of its value, it was proper to show that the rents received were what they ought to have been; and, it being for the interest of the plaintiff to have the value of the property appear small, this showing may have been needed to secure full credit for this feature of its evidence.

The opinion of a witness as to the value of the property was objected to because he was asked to, and did, take into consideration, in forming his opinion, a list of the rents which had been prepared and furnished by the plaintiff. The list had been sworn to as correct, and been put in evidence in connection with the testimony of the official who prepared it, and it was not error to permit the witness to take it into consideration in forming his opinion.

The plaintiff claimed a total loss, but had built upon some of the walls left standing, and had used some of the fixtures of its banking rooms. In explanation of the apparent inconsistency, the plaintiff offered evidence for the purpose of showing that the property named was in fact worthless, but was used to expedite the work of construction for the convenience of the plaintiff's business, and without other advantage to the plaintiff. In this view, evidence was received to show that the long counter in the banking room and the glass and metal screening, although so damaged as to be practically worthless, were repaired because it would take less time to repair them than to get new ones; and that the walls built upon were made use of, not because of any value they had, but because their business could be accommodated thereby more speedily. In the same line, evidence was received to show how the walls had been injured by the smoke of the pine wood, the great heat of the fire, and the water thrown into the building; to show the necessity of removing and replacing several thousand brick in the walls used, the expense attendant upon shoring up the walls above the portions to be removed, and the difficulty of putting furring on the damaged walls in preparation for the plastering and finishing; to show that interior walls were built, and the manner in which these were attached to the outer walls by ties, bolts and truss rods, to afford them support; to show that the water used had weakened the foundation, and that this had caused the foundation and walls to settle and the old walls to pull off from the new structure, and that the settling had caused cracks in the building and sags in the old floors, and that after these floors had been brought to a level by shimming there was a further settling. All this evidence came in under exception.

It was held in the former decision that the plaintiff was entitled to account for its making use of walls which it claimed

were not worth using. It must be equally true that the plaintiff is not precluded from showing the worthlessness of the walls by the fact that it made use of them. It is argued, however, that the evidence regarding the settling of the new structure makes the defendant liable, not only for the injury to the foundation and walls of the building insured, but for the injury which resulted to the new structure from the plaintiff's election to build on the damaged foundation. It is apparent that this evidence was not received to extend the damage beyond a total loss of the insured property, but to sustain the claim of the plaintiff that there was a total loss,—as against the defendant's claim, based in part upon the plaintiff's conduct, that the remnants were worth $30,000. It is clear that the evidence regarding a subsequent settling was evidence tending to show an injury to the foundation, and the defendant could not require its exclusion on the ground that it was capable of being misapplied to its injury.

As bearing upon the expense of removing the debris in preparation for rebuilding, the plaintiff introduced under exception evidence showing that the first thing the workmen did was to look for and remove the dead bodies; that the plastering and lath and old floor boards had to be carried to the rear of the building and thrown from the windows, and that this involved looking to see that no one was beneath; that there were public sidewalks on three sides of the building close to it, and that coverings had to be built to protect the public and plaintiff's tenants who insisted on remaining in the basement; that it would have been better for the plaintiff to have had the building as it stood after the fire out of the way than to use it, and that it cost about four thousand dollars to clear away the old material that was not used. It is specially objected in argument that the witness' statement that the remnants were a damage instead of a benefit involved the very question of valuation which the jury was to determine, and that the plaintiff's introduction of evidence showing the expense it incurred in protecting its tenants was an indirect way of securing its rents at the expense of the defendant. As to the first objection, it appears from the defendant's brief that in other parts of his testimony the witness described the condition of the walls and what was necessarily done in clearing away the debris. With this in the

case the witness could properly give his judgment as to values. The exact testimony upon which the second objection is based is this: "The tenants of the basement insisted upon using there, and the people, we had to protect them." There is nothing here to indicate that anything was done for the protection of the tenants that was not necessarily done for the protection of the general public.

The plaintiff's treasurer, when cross-examined by defendant's attorney, said that they had never offered the remnants for sale. In re-direct examination, had on a later day, the witness was asked if he then recalled making such an offer, and if he did, to tell whom he offered it to and at what price. This was objected to as not proper re-direct examination; and after some reference by plaintiff's counsel to the character of the cross-examination, the witness was permitted to answer, under exception, that they had offered to sell the property to the insurance people for $5,000. In a discussion following the answer, the point that it was a self-serving declaration was first made, and there was then further reference by plaintiff's counsel to the questions put in cross-examination, after which a motion to strike out the answer was made and overruled, and an exception taken. On a re-cross-examination, it appeared that this offer was on condition that the insurance companies reconstruct the building. Defendant then moved again that the testimony regarding the offer be stricken out, and the motion was overruled and an exception taken. The defendant now claims that it was error to permit the witness to state on re-direct examination the price for which he offered to sell the debris to the insurance people, and error to refuse to strike out the evidence after the nature of the offer was fully disclosed. Some members of the Court would dispose of this matter upon the ground that the defendant has no valid exception, but a majority prefer to place the determination on a different ground. It is true, as argued by counsel, that the witness was asked nothing in cross-examination about price or parties. But it is not always necessary that counter inquiries be confined to the things specifically mentioned in the previous examination. The manifest purpose of the original cross-examination was to produce in the minds of the jurors through the answers of the witness a belief that the plaintiff valued the remnants highly as a basis of reconstruction,

and immediately entered upon the work without regard to the defendant's option to rebuild, and without having considered any other disposition of the remnants than to make use of them itself. In these circumstances, it was not error to allow the witness to state that they made a proposal to the insurance companies which was in effect,—allow us $5,000, and you reconstruct the building. This was calculated to weaken the impression which the cross-examination was designed to make, and might easily have made if left without this statement.

The treasurer was permitted to testify that after the fire he and his associates looked at the walls, talked over what it was best to do, and decided to go to work immediately and use the walls as best they could; and that this was in accordance with his opinion. It is argued that this was permitting the witness to put before the jury the opinion and judgment of the other bank officials as well as his own. It was clearly permissible to present in this manner the conclusion of the plaintiff informally reached and immediately acted upon.

It appeared that the old building was finished in southern pine, and the plaintiff was permitted to show that this was the cheapest kind of finish that could be used. The plaintiff was also permitted to show that the fact that the windows in the upper story were circular in form made the building less valuable. The old vault was used in reconstructing the building; and the plaintiff was permitted to show that this vault was not up to date, and to show the improvements that have recently been made in the manufacture of vaults. All this evidence was admissible. As regards the vault, its value was to be determined in part with reference to the better construction and greater convenience of those in use at the time in question.

A contractor and builder who took part in the reconstruction and had been acquainted with the building before the fire, was permitted to testify that it was a very low grade building. This would certainly have been proper if the witness had previously given a description of the building. For aught that appears this may have been done in other parts of his testimony. It appears incidentally, in connection with other exceptions, that the witness had such knowledge of the details of the previous structure as would necessarily be derived from an inspection of the ruins with a view to making use of them.

The plaintiff offered, as proof of an admission on the part of the defendant, a certified copy of the transcript of the former trial to show that while the presiding judge was charging the jury he said: "I understand no question is made by the defendant as to the loss on the personal property. You will therefore treat the amount shown by the plaintiff's proof of loss as the value"; and thereupon said to defendant's counsel, "I presume there is no dispute" as to the amount; upon which one of them replied "I don't think so." It being conceded by the defendant that the proof of loss in evidence in this trial, and the claim for loss of personal property made by the plaintiff in this trial, were the same as in the former trial, the above portion of the transcript was admitted and read to the jury, to all of which the defendant excepted. We think the evidence was admissible. The right to use the admission on another trial was not precluded by any limitation of the defendant's purpose, and the fact that the defendant took the course it did was some evidence tending to establish the justness of the plaintiff's claim in this particular.

It appeared from the cross-examination of plaintiff's treasurer that in 1898 he signed an application for insurance on this building wherein he placed the value of the land and building at $60,000, and the value of the land without the building at $15,000, and that in 1903 and 1906 he signed applications for insurance on the building wherein he placed its value at $50,000. In re-direct examination the witness was asked if something occurred after 1898 which caused him to change his opinion as to the value of the property, and he replied that his opinion was that the building was carried at too high a price for the income they were receiving from it—that it wasn't worth $45,000. He was then asked what course he took as an officer of the bank in reducing the valuation of the building, and his reply was: "We charged off $5,000 from time to time to cut down the valuation until it was reduced to $40,000,—which included the whole thing." In reply to a further inquiry the witness said: "We began to charge off along as we saw the property was carried at too high a price." In this connection the witness was permitted to testify that they had reduced the valuation of the building by the process mentioned so that at the time of the fire it stood on the books of the plaintiff at $40,000, including the

land. The plaintiff's books were introduced, and these showed the reduction testified to. The witness was also asked whether he signed the application of 1903 before or after it was filled out, and said he thought he signed it before. The witness was recalled by the plaintiff during its rebuttal, and having stated that he made an error in regard to the rate at which the valuation was charged off, he was permitted to testify that it was $10,000 at a time instead of $5,000. In this connection the witness produced certain of the plaintiff's books of account and was permitted to state where in the different books the entries showing the amounts to be $10,000 appeared, and the entries having been thus indicated and identified they were offered and received in evidence in connection with the testimony of the witness. All this was subject to defendant's exceptions.

In the former decision it was held proper for the witness to explain his applications by stating that his opinion as to the value of the building was changed by the insufficiency of the income to make it a paying investment, and that the reduction made was in accordance with his opinion as to its value. It is said that the present case differs in that the witness nowhere testified that the changes made were in accordance with his opinion. But the first question and answer had direct reference to a change in his opinion as to the value, and we think it fairly appears that his whole testimony had reference to changes which represented his judgment. It is objected that by using the plural form he placed before the jury the judgment of officials who were not witnesses. No such objection was suggested in the court below. It was not error to permit the witness to say that he signed the application of 1903 in blank. The testimony was not offered to break the force of the writing in its relation to the insurance contract, but for its bearing upon the position of the signer as a witness. When plaintiff's books were first offered no ground of exception was given, but on the second offer they were objected to as incompetent, and as self-serving statements. The question saved as to their introduction when first offered is presented in the bill of exceptions in conjunction with the exception taken to the testimony of the witness when first re-examined, and they evidently came into the case in connection with and as confirmatory of the testimony. It is specifically stated that they were so received when subsequently of-

3

fered. The defendant argues that it did not appear that the books were kept by the witness, and that consequently they were not competent to corroborate his oral testimony. But there is nothing to show that these books were not kept by the witness. Moreover, the nature and purpose of the entries were not such as to bring them within the requirement relied upon. These entries were a record of the plaintiff's action, pertaining to matters known to and participated in by the witness as an official of the plaintiff; and they were not dependent for their corroborative effect upon the hand or oath of the person who made them.

The defendant offered to show by an official of the plaintiff the amount expended by the plaintiff in rebuilding, as an aid in determining the value of the unburned portion of the structure. It appeared from undisputed evidence that the interior of the newly built part was constructed on an altogether different plan, of different grades of material, and was a very different and more expensive building than the one that was burned. The offer was properly excluded.

The defendant excepted to the introduction by the plaintiff in rebuttal of an exhibit which is not among the papers submitted, but is said in plaintiff's brief to consist of figures relating to the income which had already been put in evidence. It appears that this paper was offered in connection with the testimony of an official who had been called by the plaintiff in the opening, and afterwards called by the defence. It is argued that if the paper was entitled to admission it should have been introduced by the plaintiff in its opening. No error appears.

The defendant produced two experts from other jurisdictions; and, it appearing on cross-examination that they had no arrangement with the defendant regarding their compensation, the plaintiff was permitted to inquire what they expected to charge and receive. An examination of this character is allowed as bearing upon the interest of the witness.

Reversible error in the arguments of plaintiff's counsel is claimed in that counsel referred to the experts as hired to attend court and testify, when the evidence was simply that they expected to charge so much; in that counsel said the jury would be justified in finding a total loss, referring to the testimony of witnesses who said it would have been better for the plaintiff if what was left by the fire had not been there; in that counsel

said the defendant had not produced witnesses who had testified to the cash value. The language used with reference to the experts was not entirely accurate, but cannot be classed as harmful error. The remark that the jury would be justified in finding a total loss was evidently an argumentative assertion as to the effect of all the evidence regarding the ruins and the expense connected with them, and not an appeal to the jury to ignore the cash value of the remnants in reaching their conclusion; and the jurors cannot have understood it differently. The case was being tried upon specifications which allowed $5,000 for the property left, and the president of the plaintiff had testified that the fair cash value of what remained of the building was $5,000. Nor can error be predicated of the assertion that none of defendant's witnesses had testified to the cash value. In taking the exception defendant's counsel named such a witness, and plaintiff's counsel at once acknowledged that he was wrong and withdrew the statement.

The defendant claimed that the cash value of the remnants was what they were worth for use in rebuilding, and saved the question by an exception to evidence and by a request to charge. The request was as follows: "In determining the cash value of the unburned portion of the building you will confine your inquiry to what this portion of the building was worth to be used by a prudent man in repairing or reconstructing the building." The charge upon this subject was as follows: "You may allow for what was left at the highest cash value for any purpose including its use by the plaintiff for the purpose of reconstruction or repairs, and if you estimate its value for this purpose it should be for such an amount as it would be worth if so used by a reasonably prudent man for that purpose." The instruction follows the request in prescribing the rule for determining the value of the remnants for the purpose of rebuilding, and differs from the request only in permitting the allowance of a larger sum if the jury should find that the remnants were worth more for some other purpose. The defendant cannot complain of this, for the larger the allowance for the remnants the smaller would be the loss.

*Judgment affirmed.*

POWERS, J., concurring.   I concur in the result, but dissent from the opinion of the majority on exception No. 53, which concerns the testimony of Mr. Ritchie, the plaintiff's treasurer. It seems to me that the testimony regarding the price at which the ruins were offered for sale and the person to whom they were offered were, as the case stood, plainly inadmissible, and if properly excepted to, its admission would be harmful and reversible error.   All this evidence was admitted for was to allow the witness to correct a former statement.   This is plainly apparent from the record; and in order clearly to present my views, I wish to quote from the record more fully than the majority opinion does.   Mr. Ritchie had testified in cross-examination, to the effect that no attempt was made to sell the "remnants" after the fire.   On re-direct examination, his attention was called to this statement and he was asked to say,—if he then remembered offering the remnants for sale,—to whom he made the offer and the price named.   This was objected to generally and after some discussion, the court asked the plaintiff's counsel if he desired to correct the witness' testimony in respect of this matter, and counsel answered that he did; and the court ruled that he might do so.   So the ruling was, plainly enough, that the witness might correct his misstatement.   The witness was then asked if he did offer the remnants for sale, and answered that he did.   The correction, then, was complete.   Nothing more was required to make the previous statement accord with the fact; and the leave granted by the court was exhausted.   This answer was excepted to, but it was too plainly admissible in correction of the witness' former statement to require discussion.   The witness was then asked, "At what price?"   The defendant objected, saying that "the objection is that that is not proper re-direct," thus waiving all other grounds of objection. *Weeks* v. *Barron*, 38 Vt. 420.   But as against this objection, it was not error to receive the evidence; for the order of evidence is always within the discretion of the court, unless it appears that the excepting party has been prejudiced.   *Slack* v. *Bragg*, 83 Vt. 404, 76 Atl. 148.   The question was repeated, and the witness answered that the price was $5,000.   To this the defendant objected, but not until the answer was given.   Nor did he state any ground or take any exception.   The witness was then asked to whom the offer was made, and answered that it was

the insurance people. He was asked if it was the insurance people who insured it, and answered in the affirmative. After this answer had been given, counsel for the defendant objected, saying: "I object, Mr. Howe. I objected in ample season to the price itself. That isn't admissible, a self-serving declaration of that kind." Then came a discussion during which counsel for the defendant alluded to an attempt to make evidence admissible by saying it was to correct his testimony. Whereupon the court said, "This is confined right to a correction of his examination last Saturday, of the question then asked," and it "can't go any further." Defendant's counsel moved that the testimony regarding "the price, etc." be stricken out. From this it is plain that the court was ruling that the evidence must be kept within the proper limits of correction, and when counsel for the plaintiff insisted that the witness had done nothing but correct what he had before said, the court said that the answers might stand subject to the exception of the defendant. No claim was made that the objection to the last question was seasonable, and nothing appears to show that it was in fact seasonable or treated so by the court. It stands then as an objection too late to be availing. *State* v. *Fitzgerald*, 72 Vt. 142, 47 Atl. 403.

I therefore maintain that the question decided by the majority was not ruled upon by the trial court. Indeed, it was not before it. For the evidence complained of was not offered or received as proper re-direct examination. It was offered and received solely as a correction. That it exceeded the bounds of correction cannot be denied, and had an adequate exception saved *that* point, a reversal would be necessary. The trouble with the defendant's position is that it did not reserve the question. Nor is there anything in what followed to aid the defendant.

The exceptions state that on re-cross-examination this witness gave further testimony on the same matter subject to defendant's exception. This, of course, avails nothing, for the defendant itself was examining the witness, and one cannot except to his own questions. During this re-cross-examination, it appeared that the offer to the insurance people was conditional and (in the circumstances) meaningless, and the defendant again moved to have the testimony stricken out, but it was allowed to

stand subject to defendant's exception. In this there was no error. As we have seen, the evidence had come in without any valid objection, and to allow it to stand was well within the discretion of the court. See *Laurent* v. *Vaughn*, 30 Vt. 90; *Wead* v. *St. Johnsbury & L. C. R. Co.*, 66 Vt. 420, 29 Atl. 631.

Believing that the majority has passed upon a point not in the case—and decided it wrongly at that—I would dispose of the matter as above.

I am authorized to say that *Watson*, J., concurs in these views.