# IN RE ASSESSMENT OF TAXES, KAPIOLANI ESTATE, LIMITED.

APPEAL FROM TAX APPEAL COURT, FIRST TAXATION DIVISION.

ARGUED SEPTEMBER 22, 1913.            DECIDED OCTOBER 8, 1913.

ROBERTSON, C.J., PERRY AND DE BOLT, JJ.

TAXATION—*valuations.*

>    Upon the evidence a decision of a tax appeal court is reversed and lower valuations placed upon the property involved.

OPINION OF THE COURT BY PERRY, J.

This is an appeal by the taxpayer from valuations placed by the tax appeal court upon two pieces of land for taxation purposes for the year 1913.

One of the tracts, known as Uluniu, is situate at Waikiki, mauka of Kalakaua Avenue, and has a frontage of about 968 feet on that highway and an area of 17.786 acres or 781,195 square feet. The land was returned in January, 1913, at a valuation of $50,000, and was assessed at $85,400. The valuation fixed by the tax appeal court was $77,339.62. The assessment for 1910 and 1911 was $40,000 and for 1912 $50,000.

The assessor testified that during the three years last past property in the general locality now under consideration had, in his opinion, increased somewhat in value; that that portion of Queen Liliuokalani's land which fronts on Kalakaua Avenue and adjoins on the east the land of the appellant was assessed for 1913 at a valuation of fifteen cents per square foot and the assessment was accepted; that a piece of land opposite the Moana Hotel and near the tract in question and with an area of 7140 square feet was assessed at about twenty cents per square foot and another piece in the same vicinity and with an area of 13,200 square feet was assessed at about twenty-two cents per square foot; and that the assessment of Uluniu was, for the portion fronting on Kalakaua Avenue to a depth of 250 feet, at the rate of fifteen cents per square foot and for the remainder at the rate of $4000 per acre.

From other evidence in the case it further appeared that a large portion of the front part of the land under consideration is lower than the level of the adjoining street, in places as much as two and one-half feet; that the whole tract is sandy; that the Queen's land is not below the street level and that to some extent at least its sand has been replaced with soil; and that for one month during March and April, 1913, the appellant by public advertisement offered the whole tract for sale, having for the purpose first subdivided the property, with provision for five streets, into eighty-four lots, the one upon which the dwelling-house stood containing an area of 3.595 acres and the others varying in size from 50 ft. x 100 ft. to about 84 ft. x 100 ft. The prices asked varied from thirty cents per square foot, for

lots fronting on Kalakaua Avenue, to ten cents per square foot and other terms offered were "one-third cash, balance in four years time, first year without interest, balance of term 6% per annum" and that "a lot with a frontage of twenty feet on Kalakaua Avenue, and running to the sea-beach, will be included in the Uluniu tract and all purchasers of lots will have a perpetual right of easement of ingress and egress to the beach." Applications were received for twelve only of the lots and the offer of sale was therefore withdrawn.

Not very far from Uluniu, on the mauka side and to the west, there is much swampy land. Uluniu itself produced no income at the assessment date. The only use for which it seems available at present is for residence purposes.

A real estate expert testified that in his opinion the full cash value of the land on January 1, 1913, was at the rate of $2500 per acre or $44,465 for the whole tract. There is no evidence directly supporting a valuation substantially higher. The inability to sell in lots upon the terms offered shows that the prices asked were higher than the salable value. The fact that the owner of adjoining land accepted an assessment of fifteen cents per square foot, while evidence, is not entitled to much weight. The same is true of the accepted assessments of the two small lots opposite the Moana Hotel.

Since hearing the argument in the case we have viewed the premises in question. Upon all the evidence we find that on January 1, 1913, the full cash value of the land of Uluniu was not more than the amount named in the return, to wit, $50,000.

The other piece of land involved in the case is situate at the northwest corner of Alakea and King streets and has a frontage of 46 feet on King street and 188 feet on Alakea street, with a depth of a little less than 46 feet at the mauka end. A substantial two-story building of stone and brick, completed in the early part of 1903 at a cost of $65,000, stands upon the land. The property was returned at $53,400, assessed at $90,190 and

valued by the tax appeal court at $75,190. The assessment for 1910 and 1911 was at $45,000 and for 1912 at $53,400.

The assessor's present valuation was arrived at by valuing 2990 square feet on the corner at $5 per square foot and the remaining 6310 square feet at $4 per square foot, a total of $40,190, and the building at $50,000. The evidence for the Territory was that the land on the other corners of King and Alakea streets is assessed at $5 per square foot and other land in the neighborhood, on Alakea street, at $4 per square foot and that the assessments have been accepted; that in January, 1910, land at the corner of Bishop and King streets was sold at $5.75 per square foot, inclusive of old wooden buildings standing thereon, and land at the corner of Bishop and Merchant streets at $5 per square foot; that in 1910 land at the southwesterly corner of Merchant and Alakea streets, with a substantial brick building, was sold at the rate of about $3 per square foot; that land at the southwest corner of Alakea and Hotel streets, 7142 square feet, was recently sold for the sum of $29,000; and that in June, 1912, 996 square feet of land on the westerly side of Alakea street, between King and Merchant streets, was sold for $8000. A witness, called by the Territory as an expert on values of real estate, testified that in his opinion the full cash value of the property in question on January 1, 1913, was $98,150, but since the estimate was confessedly formed without any consideration whatever of the rentals received or of the income-producing capacity of the property it is not persuasive. The following facts also appear from the evidence: that for some time past the owners have been willing to sell the property at the price of $100,000 payable on favorable terms as to deferred payments; that at a time not stated appellant received an offer of $100,000 for the property, $1000 only to be paid in cash, other installments to be paid from time to time until $40,000 in all was paid, the appellant to remain in possession in the meantime, and the balance of $60,000 to be secured by mortgage for eight or ten years; that this offer was subsequently

In re Taxes, Kapiolani Estate, 21 Haw. 667.

withdrawn; that in 1912 an offer of $50,000 cash was made for the property by a person financially responsible and that the offer was refused; that the cellars under the stores are leaky and, in spite of efforts to remedy the difficulty, admit underground water; that for the first three years after its completion the building was without tenants and thereafter was occupied in part only until 1912 when for the first time it was wholly occupied; that the total rentals for the fully occupied building were, on January 1, 1913, at the rate of $6726 per annum; that five of the stores are under leases expiring respectively in 1914, 1915 (three of them) and February, 1917, and that as to all the other stores and offices the tenancies are at will; and that the annual expenditures are, for the privilege of swinging the shutters of the rear windows over the adjoining land, $120, for insurance $562.87, labor $600, electric lights $120, water $50, sewerage $20 and repairs (estimated) $120. Taxes at the present rate, on a valuation of $65,000, would amount to $724.75, making the total annual expenditures $2317.62 and leaving a net annual rental, while the whole building is occupied and at the rates prevailing at the last assessment date, of $4408.38.

The offer of $100,000 was not for cash and was withdrawn and is therefore without weight as evidence. The income-producing capacity of the property is the most important of the facts disclosed by the evidence which tend to throw light on the full cash value. It is not claimed that on the assessment date the rental value was greater than that shown by the rents actually received at that time. A net annual income of $4408.38 would be 6 78/100% on an investment of $65,000. It would be unsafe, however, for an intending purchaser to regard the average net annual income as being as much as $4408.38, particularly in view of the fact that for so many years the building was, in whole or in part, without tenants. Reasonable allowance should be made for possible periods of partial vacancy and for possible lowering of rents, to say nothing of the fact that

In re Taxes, Kapiolani Estate, 21 Haw. 667.

the appellant's estimate of $120 per annum for repairs seems to be unduly low.

Upon all the evidence we find that on January 1, 1913, the full cash value of the property was $65,000.

The appeal from the valuation placed by the tax appeal court on the buildings at Uluniu has been withdrawn.

*J. Lightfoot* for the taxpayer.

*Wade Warren Thayer, Attorney General,* for the assessor.