[No. 16714. Department One. May 8, 1922.]

ROBERT WOODBURN et al., Appellants, v. SKAGIT COUNTY et al., Respondents.[1]

TAXATION (59)—ASSESSMENT—VALUATION—REAL PROPERTY. After an assessor's valuation of land, it is proper to add a further valuation for hunting purposes, upon learning that the owner had leased the land for such purpose.

SAME (59). A horizontal raise of 30 per cent after an assessment of 40 per cent of the actual value, is not unlawful where there was nothing to show that the actual amount fixed was more than 50 per cent of the true value.

SAME (212, 213)—REMEDIES OF OWNERS—EXCESSIVE ASSESSMENT— JUDGMENT—APPEAL. An assessor's clerical error in adding, to a 40 per cent valuation of land, 100 per cent for hunting purposes, may be corrected on appeal from a decree enjoining collection of the tax.

[1]Reported in 206 Pac. 834.

Appeal from a judgment of the superior court for Skagit county, Brawley, J., entered August 24, 1921, upon findings in favor of the defendants, dismissing an action to enjoin the collection of a tax, tried to the court. Reversed.

*R. V. Welts* and *Coleman & Gable,* for appellants.
*W. L. Brickey* and *W. H. Hodge,* for respondents.

BRIDGES, J.—The plaintiffs instituted this action to enjoin the defendant Skagit county and its treasurer from collecting in excess of a certain designated amount the 1918 taxes on certain real estate owned by them. After a trial upon the merits, judgment was entered dismissing the action, and they have appealed.

The property involved is described as tax No. 1 and tax No. 2. In tax No. 1 there were 151 acres of improved and 24 acres of unimproved land, and in tax No. 2 there were 66 acres, 52 of which were improved, and 14 unimproved. The land is situated on the north end of Whitney island, and near the tracks of the Great Northern Railway Company. The northerly boundary of the land is the meander line along Padilla Bay. It was the intention of the assessing officers of Skagit county to value all lands in the county for taxation purposes at 40 per cent of the actual value of such lands. In 1918, the deputy field assessor, after looking over the lands in question, made a valuation on the lands in tax No. 1 (exclusive of improvements) of $9,000, and a valuation on the lands in tax No. 2 (exclusive of improvements) of $3,120; these figures were intended by the assessor to represent 40 per cent of the actual value of the lands. After the deputy assessor had turned in these values, the assessor learned that the appellants had previously leased the hunting rights on this land, or a part of it, for an express con-

sideration of $375 per year. The assessor considered that the land had considerable value for hunting purposes aside from its value as a farm, and added $4,000 on account of the hunting value; $3,000 of this amount was placed against the land in tax No. 1, thus raising it from $9,000 to $12,000, and $1,000 of the amount was placed against the lands in tax No. 2, thus raising it from $3,120 to $4,120. After all this was done, the assessor, deeming all of the real property of the county assessed at too low an amount, made a horizontal raise on all such real estate of 30 per cent. Adding the 30 per cent to the other figures given, tax No. 1 shows a valuation for taxation purposes of $15,600, and tax No. 2 shows a valuation of $5,356 for the same purposes. It was upon these values that the tax was levied, and the collection of a part of which is sought to be enjoined.

The appellants contend the taxes should have been levied upon the original valuation, as made by the deputy assessor, of $9,000 on tax statement No. 1, and $3,120 on tax statement No. 2. In other words, they contend that the raise of the valuation on account of the hunting privileges, and the 30 per cent horizontal raise were unauthorized.

There is no testimony in the record showing—or tending to show—that, in making up the value of these lands, the assessor acted in a fraudulent or arbitrary manner. On the contrary, it appears very conclusively that in all these proceedings the assessor was acting in the utmost good faith and exercising his best judgment. Nor does the record show that these lands were valued too high, except as to a clerical error in fixing the value for hunting purposes, as hereinafter stated.

The testimony shows that appellants had leased the hunting rights—which included an acre or two of the land for a hunting lodge and gardening purposes—for

$375 per annum. Plainly, the land had some value for hunting purposes, and it was proper for the assessor to take that fact into consideration in arriving at the value of the land for the purposes of taxation. It is true there was some testimony tending to show that the giving of the hunting lease added no value to the property, but there was also testimony to the contrary, and under such circumstances we have no right to interfere with the value which the assessor placed on the land, while acting in good faith and to the best of his judgment.

Appellants further contend that the horizontal raise of 30 per cent was unlawful because it brought the assessed valuation to more than 50 per cent of the actual value, as provided by statute. They arrive at this conclusion on the assumption that the valuation placed on the lands in the county prior to the 30 per cent raise represented 40 per cent of the actual value. But it is also probably true that the assessor was of the opinion that the lands in the county had been assessed at less than 40 per cent of their true value, and for that reason raised all such values 30 per cent. In other words, there is nothing which shows that the actual amount fixed by the assessor upon which taxes should be levied was more than 50 per cent of the true value of the property. In fact, the contrary appears.

It will be remembered that the amount added to the deputy field assessor's figure, because of the rental for the hunting privileges, was $4,000. The assessor arrived at this sum by figuring that the rental of $375 per year would be equal to 6 per cent interest on $6,500, but concluded that of that amount he would place $4,000 only against the land. It will thus be seen that the assessor fixed a 40 per cent valuation on the land for agricultural purposes (being the same value placed on other lands in the county), and fixed what he considered

a 100 per cent valuation on the lands for hunting purposes. For the purposes of taxation, he should have fixed the hunting value at 40 per cent of the actual value, as determined by him, to wit, $4,000. In other words, what the assessor was trying to do was to arrive at a 40 per cent valuation of the land for all purposes. He had previously fixed certain figures as 40 per cent valuation of the land for agricultural purposes, and then, through mistake unquestionably, added to that 40 per cent the 100 per cent value for hunting use. The respondent contends that the testimony is not subject to the construction which we give it, but it is manifest to us that such is the only construction that can be given it. On the witness stand, the assessor said: "Well, if it (the land) was leased for $375 extra for hunting purposes there was an added value of about $6,500 because—the court is a better figurer than I am, but I think $6,500 at 6 per cent would make $375, and I didn't want to put that all on him, but, says I, I think he is entitled to pay something extra on account of that lease, and instead of putting the whole thing on I added $4,000 on it, which I honestly think was a fair thing to do."

It is true the court seems to have found that the land was of more value for hunting purposes than the appellants were given for their lease, but we are reviewing the action of the assessor because he is the one who must make the valuation, and we must try to arrive at his intentions. The total valuation for each tract should have been made up as follows: tax No. 1, value for agricultural purposes, $9,000, to which should be added $1,200, which is 40 per cent of the $3,000 value for hunting rights, which would make $10,200, and if that sum be raised 30 per cent, the total value for taxation purposes would and should be $13,260 (exclusive of improvements). Arriving in the same way at the

proper valuation for taxation purposes of the lands within tax No. 2, we find that the amount upon which taxes should have been assessed is $4,586. In other words, there was an over-valuation of the lands in tax No. 1 of $2,340, and an over-valuation of the lands in tax No. 2 of $799. We will make this correction, not because of any fraudulent or arbitrary conduct on the part of the assessor, but because it is our duty to correct a manifest clerical error. We will not stop to calculate the tax upon these valuations.

The judgment is reversed, and the cause remanded with instructions to find the total valuation for taxation purposes on the lands in tax No. 1 to be $13,260, and those in tax No. 2 to be $4,586. The amount of taxes to be paid by appellants shall be based on these valuations.

PARKER, C. J., FULLERTON, MITCHELL, and TOLMAN, JJ., concur.