LEWIS J. SOMERS *vs.* CITY OF MERIDEN ET AL.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued June 6th—decided July 27th, 1934.

*Lewis J. Somers, pro se,* the appellant (plaintiff).

*Harry R. Cooper,* with whom, on the brief, were *Denis T. O'Brien, Jr.,* and *Benjamin Tonkonow,* for the appellee (defendant).

HINMAN, J. In 1926 the plaintiff purchased for $41,000 a lot, located on West Main Street in Meriden, having a frontage of fifty feet and a depth of one hundred and fifty feet, with a four-story brick and frame building and a four-car brick garage thereon. Directly thereafter he expended $10,000 in modernizing the main structure and converting it into a one-store building with lofts on the second, third and fourth floors so that it is adapted to a retail furniture

business, and leased the property for that purpose for a term of fifteen years from July 1st, 1926, at an annual rent of $6000 for the first five years, $8000 for the second five, and $10,000 for the third. In addition, the lessees agreed to pay the lessor, at the rate of $1000 per year, the $10,000 expended by him for the alterations and improvements, and to pay for all interior repairs. Up to October 1st, 1932, the lessees had occupied the premises and paid the agreed rent and $6000 on account of the $10,000. In 1929 the assessors made a revaluation of real estate for tax purposes, and in that year, and in 1930, 1931, and 1932, the plaintiff's property was assessed as follows: land $40,300, main building $25,330, garage $1210, a total of $66,840. From the assessment made as of October 1st, 1932, the plaintiff appealed to the board of relief, which refused to reduce this valuation, and he appealed to the Superior Court. The court, by the methods and upon the facts found as hereinafter stated, determined the value of the buildings to be $28,266 and of the land $40,394, a total of $68,660, and dismissed the appeal. The assignments of error are unnecessarily numerous but may be consolidated into a few material points.

It was conceded on the trial that on October 1st, 1932, the "market value" of the property was not ascertainable, owing to lack of "conditions in which there are, or have been or will be within a reasonable time, willing sellers and able buyers of property like that to be assessed, and in which sales are or have been made, or may fairly be expected, in the usual and natural way of business." *Underwood Typewriter Co.* v. *Hartford,* 99 Conn. 329, 336, 122 Atl. 91. The plaintiff admits that, therefore, the valuation must be arrived at by some other method and that a proper means to that end is capitalization of income, but

asserts that the test of valuation utilized by the trial court was a capitalization at ten per cent of an annual gross income equivalent to the actual rentals of the property averaged for three years, while his claim is that valuation should be based on (1) earning capacity rather than actual earnings; (2) net income ascertained by deducting from gross annual earning capacity ascertained allowances such as taxes, repairs, insurance premiums, and vacancies, and certain percentages for such elements as depreciation, and management and rent collection; (3) capitalization of the net earnings, so determined, at the current rate of interest, alleged in this case to be not less than six per cent.

Present income and that reasonably to be anticipated exerts a large influence upon the amount which a prudent man would give for property as a permanent investment. *State* v. *Illinois Central R. Co.*, 27 Ill. 64; *People ex rel. Powers* v. *Kalbfleisch*, 49 N. Y. Sup. 546, 549. The value of property may be considered to be that which it has as used and by reason of its use, and it is often a reasonable assumption that it is worth a sum capitalized on the basis of its average income and earning capacity. *People ex rel. Panama R. Co.* v. *Commissioners of Taxes*, 104 N. Y. 240, 246, 10 N. E. 440; *Pittsburgh, C., C. & St. L. Ry. Co.* v. *Backus*, 154 U. S. 421, 14 Sup. Ct. 1114; *Oregon & C. R. Co.* v. *Jackson County*, 38 Ore. 589, 64 Pac. 307, 65 id. 369; *Citizens Savings Bank & Trust Co.* v. *Fitchburg Mutual Fire Ins. Co.*, 87 Vt. 23, 27, 86 Atl. 1056; *In re Taxes, Kapiolani Estate*, 21 Hawaii, 667, 671; *Pierce, Inc.* v. *Santa Barbara County*, 40 Cal. App. 302, 180 Pac. 641.

As a general principle, earning or income producing capacity, as distinguished from actual earnings, is to be regarded as a factor in valuation for taxation pur-

poses, but if the property is devoted to the use for which it is best adapted and is in a condition to produce or is producing its maximum income, the actual rental is a very important element in ascertaining its value. 4 Cooley, Taxation (4th Ed.) § 1146; 26 R. C. L. p. 367; *State* v. *Illinois Central R. Co.*, supra; *State* v. *Nevada Central R. Co.*, 28 Nev. 186, 81 Pac. 99; 22 Eng. Rul. Cas. 561. The trial court correctly held that in the situation here presented "in determining what is fair rental income, the actual rental income, while not controlling, is an element to be considered." It is true that, in the final analysis, it is the net income rather than the gross which affects values, but there is no inflexible rule for ascertaining the deductions to be made from the gross for the purpose of obtaining the net. If the percentage used in capitalizing gross income is sufficient to cover the deductions allowable in producing net, the result will satisfy this requirement. The trial court found, upon sufficient evidence, that ten per cent is "a fair, reasonable, and accepted percentage" to be used as a factor in capitalizing gross income from real property. The plaintiff claimed and asked the court to find that he was entitled to a net return of ten per cent, but this was manifestly excessive, as were requested findings as to at least some of the items of deduction claimed. It was open to the trial court to conclude that the percentage adopted (ten) was sufficient to cover legitimate deductions and a fair net return to the owner, and to regard the result of capitalization on that basis as, although not the sole, a very important consideration in arriving at a valuation. As to the applicability of customary percentages and the general effect of extraordinary conditions upon the determination of values for taxing purposes, the following from *Central Realty Co.* v. *Board of Review*, 110 W. Va. 437, 440, 158 S. E. 537, is apt: "Was it the

purpose of the statute to jeopardize the machinery of [the] municipality, during a depression, or was it enacted to cover ordinary conditions existing over a period of years? To ask the question is to answer it. Values of real estate and fixtures thereon are more or less constant over a period of years. . . . The fact that property cannot be sold at a particular period of depression should not be taken as conclusive that its value has been materially reduced. While the assessment is to be made as of a certain date, the value of the property is established over a period of years."

The finding shows, further, that numerous other facts relevant to the value of the property (*Rowland* v. *City of Tyler* [Texas] 5 S. W. (2d) 756) were developed and considered, including the purchase price in 1926, the alterations and improvements then made, the size and location of the lot, the dimensions, condition, and other details of the buildings, the existence of the lease and its provisions, and the effects of conditions prevailing in 1932 upon the rentability and rental of stores and other business property in Meriden. There was also considered the results of application of a method of estimating the value of the buildings which was recognized in *Underwood Typewriter Co.* v. *Hartford,* supra, p. 337, as admissible in the absence of a market, viz.: reproduction cost less allowance for depreciation and obsolescence. It is obvious that the further computation, mentioned in the finding, capitalizing the estimated income from a hypothetical building of the type most advantageous, considering lot and location, was utilized merely as confirmatory of the conclusions of value reached from the other considerations, and it is not necessary for us to determine whether this method is inapplicable as a means of determining value, as the plaintiff claims.

In his claims of law on the trial the plaintiff, while

contending that the fair rental value of the property, rather than the rent actually being received, is to be employed for purposes of valuation, conceded that the latter fact properly might be considered. As affording other considerations affecting rental value, he introduced evidence as to rents received for stores in other business blocks in the neighborhood of his property, and seeks to have inserted in the finding facts claimed to have been thus established. These were not admitted or undisputed facts, and the draft-finding indicates differences in location, arrangement, and other characteristics because of which such rents may well have been regarded as not significant of or material to the rental capabilities of the property in question. Also, even if the appellant's testimony that the rent prior to the remodeling was $250 per month be accepted, this fact would not be decisive of or necessarily affect the fair rental value after the extensive alterations, made at the ultimate expense of the lessees in addition to the agreed rent, and in view of the long and advantageous lease. The fact that property is under lease is a relevant and, if for an extended term, an important consideration. Leases soon to expire or tenancies at will, involving possibilities of early vacancies or lowering of rents, or long term leases at rentals inadequate when measured by prevailing standards tend to impair, and, equally, leases having a long term yet to run and reserving relatively high rents measurably appreciate, present value. *Woodburn* v. *Skagit County*, 120 Wash. 58, 206 Pac. 834; *Council of Newark* v. *Claringbold*, 28 Del. (5 Boyce) 133, 90 Atl. 1130; *State ex rel. Miller* v. *Thompson*, 151 Wis. 184, 138 N. W. 628; *In re Taxes, Bishop Estate*, 27 Hawaii, 190. It is sufficiently apparent that the valuation arrived at by the trial court was derived from all of the relevant considerations above mentioned and not solely through capitalization

of income, although it happens that the results of the latter were found to represent the valuation indicated by all of these circumstances.

The plaintiff is correct in claiming that for the purposes of valuation for taxation the average earnings for a reasonable period should be taken, rather than the income at the taxing date or for the current year. 3 Cooley, Taxation (4th Ed.) § 1146; *People ex rel. Jamaica Water Supply Co.* v. *State Board of Tax Commissioners,* 112 N. Y. Sup. 392, 396; *People ex rel. Szerlip* v. *Goldfogle,* 192 N. Y. Sup. 210. The trial court recognized this to the extent that instead of taking the actual rental under the lease for the year 1932 ($8000) or any part thereof, an average was struck for the three years prior to October 1st, 1932, $6866, and this was made the basis of capitalization. We understand the plaintiff to suggest that an average for five years should have been taken, and will assume for present purposes that this is a reasonable period; also, that a fair portion thereof should be subsequent to the taxing date. Prospective as well as present and past earnings are an important element in investment values, and any immediate prospect of an increase or decrease in earnings or earning capacity should be taken into consideration. *State* v. *Nevada Central R. Co.,* 28 Nev. 186, 207, 81 Pac. 99. Discussion of a ruling on evidence which is assigned as error is appropriate at this point. The appellant testified that in 1932, at the request of his lessees and after an examination of their books, he agreed to reduce their rent to $500 per month commencing January 1st, 1933. Later, this evidence was stricken out as irrelevant, but upon the principle just stated it was competent. However, the effect of the ruling could not have been prejudicial to the plaintiff. The evidence did not disclose the period during which the concession was to continue or

that it had been determined. Even if it were to continue until the expiration of two years following the taxing date, and an average be struck of the eighteen months—July 1st, 1931, to January 1st, 1933—during which rent at $8000 per year was collected, and the balance of the five-year period at $6000 per year, the average yearly rental would be $6600, which sum capitalized would give a valuation only $840 less than that fixed by the assessors, a variation too inconsequential, as applied to property of this magnitude, to show such mistake, abuse of discretion, or other defect as to impeach the valuation arrived at by them, or to justify us in interfering with the result of the exercise of the "great discretionary power" of the Superior Court in appeals of this nature. *Ives* v. *Goshen,* 65 Conn. 456, 460, 32 Atl. 932; *German American Lumber Co.* v. *Barbee,* 59 Fla. 493, 498, 52 So. 292; *New Orleans Cotton Exchange* v. *Board of Assessors,* 37 La. Ann. 423; 3 Cooley, Taxation (4th Ed.) § 1146.

Evidence of financial results of the business conducted by the lessees was properly excluded; profits or losses of a business are so commonly dependent upon causes other than the value of the premises in which it is conducted that, except in some instances as to public utilities, they are not evidence of that value. 26 R. C. L. p. 368. The plaintiff could not have been harmed by the admission of evidence of the approximate amount ($32,000) of insurance carried on the buildings, since the court found their value to be only $28,266.

There is no error.

In this opinion the other judges concurred.