

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

June 22, 1960

Honorable R. L. Lattimore
Criminal District Attorney
Hidalgo County
Edinburg, Texas

Opinion No. WW-863

Re: Proper evaluation and
assessment for ad valorem
tax purposes of gas pro-
ducing properties under a
contract presently sus-
pended by the Federal
Power Commission pending
further hearing.

Dear Mr. Lattimore:

Your request for an opinion concerns the proper valuation,
for ad valorem tax purposes, of certain gas producing properties.
You advise that the gas was originally being sold under a
contract establishing the price per MCF at 7½ cents, but that
in 1954 a new contract setting the price at 12 cents per MCF
was negotiated. The price change was "suspended" by the
Federal Power Commission, acting under the authority of the
Natural Gas Act (15 U.S.C.A. 717), pending a determination as
to the lawfulness of the new rate. The Federal Power Commission
did not act upon the rate suspension within five months, where-
upon the producer, acting pursuant to the terms of Sec. 4(e)
of the Act, placed in effect and began collecting the new
contract price of 12 cents per MCF. The Commission then
required the producer to furnish a bond to refund, with interest,
the portion of the increased price which it might ultimately
find unjustified.

In reference to the foregoing facts you ask:

"1. How should this property /i.e., the
gas reserves/ be evaluated and assessed?

"2. What recourse does the taxing juris-
diction have if the property has been evaluated,
based on a 7½ cent sales price and the F.P.C.
allows a higher figure? The taxable value is
directly related to the sales price.

"3. Can the holder be assessed the value
of the 'suspense' account?" /The suspense
account represents the amount of the rate
increase collected by the producer./

Article 7174, V.A.C.S., provides:

"Each separate parcel of real property shall be valued at its <u>true and full value in money,</u> excluding the value of crops growing or ungathered thereon.

"In determining the true and full value of real and personal property the assessor shall not adopt a lower or different standard of value because the same is to serve as a basis of taxation, nor shall he adopt as a criterion of value the price for which such property would sell at auction or a forced sale or in the aggregate with all the property in his county; but he shall value each tract or lot by itself, and at such sum and price as he believes the same to be fairly worth in money at the time such assessment is made.

". . . .

"Money, whether in possession or on deposit, or in the hands of any member of the family, or any other person whatsoever, shall be entered in the statement at the full amount thereof.

"Every credit for a sum certain, payable either in money or property of any kind, shall be valued at the full value of the same so payable. . . ."  (Emphasis added.)

Article 7149 states in part:

"'Value'--The term, 'true and full value' wherever used shall be held to mean the fair market value, in cash, at the place where the property to which the term is applied shall be at the time of assessment, being the price which could be obtained therefor at private sale, and no at forced or auction sale."

The term "fair market value, in cash," is generally held to mean the price that the property would bring when it is offered for sale by one who desires to sell but is not obliged to sell, and is bought by one who desires to buy but

is under no obligation to buy.  State v. Carpenter, et al, 89 S.W.2d 194 (Tex.Comm.App. 1936); Helms v. Day, 215 S.W.2d 356 (Tex.Civ.App. 1948); Texas Power & Light Company v. Hering, 224 S.W.2d 191 (Tex.Sup.Ct. 1949); Continental Pipe Line Company v. Kiel, 227 S.W.2d 825 (Tex.Civ.App. 1950); Texas Pipe Line Company v. Hunt, 228 S.W.2d 151 (Tex.Sup.Ct. 1950); King v. McGuff, et ux., 229 S.W.2d 188 (Tex.Civ.App. 1950); M.K.T. Railway Company v. Jaffee Cotton Products Company, 193 S.W.2d 986 (Tex.Civ.App. 1946).  Actual sales of comparable property in the vicinity on or near valuation date is the most accurate indicia for determining market vlaue.  However, all elements which properly reflect upon the "fair market value" can be taken into consideration.  See Rowland v. City of Tyler, et al., 5 S.W.2d 756 (Tex.Com.App. 1928); see also 17 Tex.Jur., Evidence, Section 162, page 439.  Our courts have prescribed no definite or exact method by which property is to be valued.  It is only required that the system adopted result in a valuation substantially the same as market value, City of Arlington v. Cannon, 263 S.W.2d 299 (Tex.Civ.App. 1953, rev'd. in part on other grounds, 271 S.W.2d 414) and not be arbitrary, discriminatory, or fraudulently induced.  40 Tex.Jur., Section 114, page 159.  However, a valuation cannot be based wholly on one factor alone.  Port Arthur Independent School District v. Baumer, 64 S.W.2d 412 (Tex.Civ.App. 1933).

Property is to be assessed for taxation at its value as of January 1 of the taxing year.  See Article 7151, V.A.C.S.; Humble Oil & Refining Company v. State, 3 S.W.2d 559 (Tex. Civ.App. 1928); Kirby v. Transcontinental Oil Company, 33 S.W.2d 473 (Tex.Civ.App. 1930).  Fluctuations in value or income (either enhancement or depreciation) cannot be anticipated. Humble Oil & Refining Company v. State, supra; Kirby v. Transcontinental Oil Company, supra; State v. Republic Natural Gas Company, 181 S.W.2d 592 (Tex.Civ.App. 1944, error ref.). Earning capacity, or income, from a mineral estate is of particular importance in estimating or assessing the value of the estate, Electra Independent School District v. W. T. Waggoner Estate, 168 S.W.2d 645 (Tex.Civ.App. 1943), but in the instant case, the amount of income which ultimately will be relaized from the suspended 12 cent contract price is prospective, or speculative.  It is within the province of the Federal Power Commission to either grant the price increase, refuse it, or, if it is deemed in the interest of the public convenience and necessity, to reduce the price below the $7\frac{1}{2}$ cents established by the original contract.  What the Federal Power Commission will do, is, to a large extent, a matter of surmise and conjecture.  Therefore, it is obvious that only the price that is certain as of January 1, i.e., $7\frac{1}{2}$ cents per MCF, can be considered as income from the gas property.

The fact  that the suspended 12 cents per MCF price cannot
be considered as income does not mean that it must be altogether
excluded from consideration in evaluating the property.  The
general rule on this point is stated in 51 Am.Jur., Sec. 706,
p. 656:

> "It would seem upon principle that
> prospective value cannot properly be made
> the substantive basis for assessment,
> although it may be considered to the extent
> that it enters into or is reflected by
> present value."   (Emphasis added.)

To the same effect, see Lewis J. Summers v. City of Meridan,
119 Conn. 5, 174 A. 184 (1934); McCardles Estate v. City of
Jackson, 61 So.2d 44, (Miss.Sup.Ct. 1952), and cases collated
at 24 A.L.R. 649 and 95 A.L.R. 434.  Texas appears to be in
accord with this line of reasoning.  At 40 Tex.Jur., Sec.
108, p. 149, it is stated:

> "Prospective value, in the sense of
> value at some future time, cannot
> legitimately be made the basis of a
> determination of present value.  On the
> other hand prospective value in the sense
> of potential future use, so far as it
> affects present market value, is undoubtedly
> a factor that may be considered."

Therefore, it appears that the fact that a hearing to determine
whether a rate increase should be allowed is pending before
the F.P.C. can be considered to the extent that such fact
affects the market value of the subject property as of January
1.  It cannot be said that a person desiring to buy the property
would not take this factor into consideration.  A buyer might
offer a higher price because of the expectancy of a price
increase; it is also possible that he would be induced to offer
a lower price because the rate increase might be disallowed,
which would necessitate refund of the money held in suspense
and payment of six per cent interest thereon.

The influence of this factor upon market value is fraught
with surmise and open to conjecture.  This, however, does not
affect its status as a proper element for consideration; the
same is more or less true of many elements which may be properly
considered on the issue of value.  As pointed out in Allen v.
Emery Independent School District, 283 S.W. 674 (Tex.Civ.App.
1926):

"There are numerous elements and
tests of value. It is generally a matter
of estimate or opinion, at best, as of
time and distances and the like, and about
which witnesses the most competent to
know often widely differ in particular
instances according to personal determina-
tion of the primary facts which support
their conclusion. The constitutional pro-
vision is manifestly founded upon such
recognized situations. Therefore, the
conclusiveness of valuation must rest with
such tax officers or tribunals 'as may be
provided by law.' A presumption of correct
action will attend what they do and give
prima facie support to their conclusion when
apparently warranted by law, but this proposi-
tion is not conclusive in any case. A merely
and purely arbitrary or capricious valuation
made by such tribunal disproportionate to the
property's value is ground for objection and
cause for interfering with its action."

Because of the conjectural nature of this particular element of
value, it is incumbent upon the taxing authority to use prudent
judgment in considering it, and to receive all testimony
regarding its influence upon the actual market value of the
gas property. As was pointed out in State v. Illinois C. R.
Company, 27 Ill. 64, 79 Am.Dec. 396 (1861):

". . . .We are not prepared to say that
an assessor, making yearly valuations of property
for taxation, can or ought to take into considera-
tion anything more than the value of the prop-
erty at the time he is called upon to value it,
since, if it does increase in value in the
process of time, advantage can be taken of it
in future valuations, as they may be periodically
made, but if he can and does look to the future
for the purpose of ascertaining the present
value of property, he should do it with extreme
caution." (Emphasis added)

From the foregoing discussion, it appears that the answer
to your first question is that in assessing the property
consideration should be given to all relevant and proper
factors regarding value as of Januuary 1. Income is an
important element to be considered but cannot act as the
sole criterion. Only 7½ cents per MCF can be considered as

the income from the property in question until otherwise changed by order of the Federal Power Commission.

The fact that there is pending before the Federal Power Commission a hearing to determine whether the price of the gas produced from the property should be increased may be considered, but only to the extent that it actually influences or affects market value as of January 1.

In answer to your second question, you are advised that the county must assess the property in accordance with the foregoing rules. There obviously would be no recourse to reassess the property and consider the income at 12 cents per MCF should the F.P.C. allow the higher figure.

Your third question is whether the holder can be assessed the value of the suspense account. If the suspense account is represented by cash, either in the possession of the holder or on deposit in a bank, it is to be assessed as personalty. If the holder is a domiciliary of Texas and the suspense account is on deposit outside the State, the county of domicile may assess the account. See Article 7147, V.A.C.S., and First Trust Joint Stock Land Bank of Chicago v. City of Dallas, 167 S.W.2d 783 (Tex.Civ.App. 1942, error ref.).

In cases where no money is actually collected and held in suspense, a different result obtains. Debts due a person over and above his indebtedness are taxable as personalty. See Article 7147, V.A.C.S., and Fielder, The Texas Tax Structure, Vol. 20, page XV, V.A.C.S. If the producer carries the suspense account as a potential asset without actually collecting the money, no tax liability arises because there is no actual debt due until such time as the F.P.C. acts upon the suspended rate. Further, the potential asset would be offset by a potential liability on the books of the producer; therefore, there would be no debt due the producer "over and above his indebtedness".

## S U M M A R Y

In evaluating property for ad valorem taxation, a taxing authority may not consider as income from gas property a price which has been "suspended" by the F.P.C., but can consider only the price in effect prior to the suspended rate change. However, the fact that there is pending a hearing to determine whether the rate increase should be granted can be considered to the extent that such

fact influences the market value of the property as of January 1.

The suspense account representing the money collected under the price increase can be taxed as personalty. However, if such price increase is not actually collected, it cannot be assessed for taxation because it is not a debt due the taxpayer over and above his indebtedness.

Yours very truly,

WILL WILSON
Attorney General of Texas

By ~Jack N. Price~
Jack N. Price
Assistant

JNP:cm

APPROVED:

OPINION COMMITTEE:
W. V. Geppert, Chairman

James R. Irion
Jot Hodges
J. Arthur Sandlin
Virgil Pullium

REVIEWED FOR THE ATTORNEY GENERAL
By:  Leonard Passmore