## SINCLAIR-PRAIRIE OIL CO. v. STATE.

No. 25472. Oct. 23, 1934.

Edward H. Chandler, Summers Hardy, and Frank Orr, for plaintiff in error.

Dave Bucker, Co. Atty., and W. D. Humphrey, for defendant in error.

OSBORN, J. This appeal involves the as-

sessment of certain property of the Sinclair-Prairie Oil Company located in Garfield county for the year 1933.

It appears that on January 1, 1933, the said company, hereinafter referred to as plaintiff, was the owner of a gasoline plant, together with all equipment for operating the same, located in Olive twonship, Garfield county, Okla. On April 29, 1933, there was filed with the county assessor of Garfield county an assessment of the property of $60,000, including the gasoline stock on hand. The assessment was raised by the county assessor to $300,000. Plaintiff appealed to the county board of equalization of Garfield county, where a hearing was had and the assessment fixed at $200,000. Plaintiff then appealed to the district court of Garfield county, where the finding of the board of equalization was sustained and affirmed, and appeal was perfected to this court.

Plaintiff contends that according to its evidence the property could be taxed only at its fair cash value, estimated at a price it would bring at a fair and voluntary sale, citing section 8, art. 10, Constitution, and section 12581, O. S. 1931. Plaintiff offered the testimony of four witnesses to the effect that the plant, at a fair and voluntary sale, would not bring more than from $60,000 to $75,000.

The state relies in part upon certain record evidence, which shows that the construction of the plant began about December, 1918; more units were added in 1919, 1920, 1922, 1925, and 1926. According to the records of the plaintiff the amount actually invested was $1,521,096.31. In 1928 the property was assessed at $750,000; in 1931, at $330,000; in 1932, after various hearings, the valuation was fixed by the district court at $211,240. The records further show that in 1928 the net profits on sales of gasoline produced from the plant, after allowing for depreciation and plant losses, was $351,006.15; in 1929, $110,018.54; in 1930, $61,618.75; in 1931, $60,075.20; in 1932, $6,170.14.

On January 1, 1933, it was estimated by plaintiff that the original investment of $1,521,096.31 had depreciated to $169,374.83.

It was estimated by witnesses for the state that the replacement cost of the plant on January 1, 1933, was $1,500,000, and at that time the plant was in 80 per cent. operation condition.

In the case of In re Assessment of the Kansas City Southern Railway Co., 168 Okla. 495, 33 P. (2d) 772, it is pointed out that certain presumptions obtain in proceedings of this nature, which are that, in reviewing the assessment of the State Board of Equalization, the presumption is in favor of the correctness of the determination of the value fixed by the board; until the contrary is made to appear, the law presumes the officers have discharged the duties which the law imposes upon them; that the board made due investigation and obtained sufficient data on which to base its assessment; that the board acted fairly and impartially with honest motives, and exercised honest judgment in fixing the valuation, and that such presumption can only be overcome by clear and convincing proof. In view of the similarity of the functions of the state and county boards of equalization, the above principles are likewise applicable herein.

In order to sustain its contention that the property, which originally required an investment of $1,500,000, would, at a fair voluntary sale on January 1, 1933, be worth only the sum of $60,000, plaintiff relies upon the factors of functional and physical depreciation, and the further fact that the machinery and equipment used in the plant are obsolete. As heretofore stated, witnesses of plaintiff, whose experience would qualify them as experts, gave their opinions to the effect that the fair cash value estimated at the price the property would bring at a fair voluntary sale on January 1, 1933, was not in excess of $75,000, and it is contended by plaintiff that in view of this testimony the board was without jurisdiction to assess the property at a greater amount than that estimated by the witnesses. The board of equalization is an administrative body. It is not bound by a particular class of evidence, but is bound to take into consideration all of the surrounding facts and circumstances which would assist it in arriving at the fair cash value of the property, estimated at a price it would bring at a fair and voluntary sale.

An examination of the record discloses that the great depreciation in the value of the property as alleged by plaintiff is not wholly due to functional and physical depreciation. The record discloses that business conditions from 1929 to 1933 have grown continuously worse. At the time the witnesses were testifying, there was practically no market for a gasoline refinery. Their deductions were influenced largely by the fact that there were no buyers for refineries at

that time. It is shown by the record that not only this plant but numerous other plants had not been operating to full capacity. The following pertinent quotation appears in the body of the opinion in the case of In re Assessment of Kansas City Southern Railway Co., supra:

"In the case of Central Realty Co. v. Board of Equalization and Review (W. Va.) 158 S. E. 537, it was said: 'So long as business conditions are normal, it is possible to arrive at the statutory value. But does the law require the rule to be strictly applied to any particular year in which property, due to depression and unhealthy business conditions, has no prospective buyer at any figure? * * * Was it the purpose. of the statute to jeopardize the machinery of state, county, district, and municipality, during a depression, or was it enacted to cover ordinary conditions existing over a period of years? To ask the question is to answer it. Values of real estate and fixtures thereon are more or less constant over a period of years. What it was valued at last year may have a bearing on this year's assessment.

" '* * * The fact that property cannot be sold at a particular period of depression should not be taken as conclusive that its value has been materially reduced. * * * While the income producing capacity of property is an important factor in determining its value, it is ordinarily not the sole thing for consideration. 3 Cooley on Taxation (4th Ed.) 2308. And, further, if the valuation is based principally on earnings, the average earnings and expenses for a series of years or for such time as is reasonably available, must be considered. Id., pp. 2311, 2312.' "

It is contended by plaintiff that the board took into consideration, in making the assessment, the profits as shown by the record from 1928 to 1932, inclusive, but it is not shown that the board relied upon this factor exclusively in determining the valuation as fixed by it. The board properly took this item into consideration, together with various other facts and circumstances, including the age of the plant and the various units thereof, the amount of the original investment, a reasonable allowance for depreciation and obsolescence, and the amount of previous assessments, and thereby arrived at the valuation of the property for taxation.

In consideration of all the facts and circumstances in this case, we are of the opinion that the plaintiff has not sustained the necessary burden of proof to justify a reversal of the cause.

The judgment of the trial court is affirmed.

RILEY, C. J., CULLISON, V. C. J., and SWINDALL, McNEILL, BAYLESS, BUSBY, and WELCH, JJ., concur. ANDREWS, J., absent.