## LOMAS & NETTLETON COMPANY, TRUSTEE
### vs.
## CITY OF WATERBURY

Superior Court      New Haven County        File #11590
(At Waterbury)

Present:   Hon. NEWELL JENNINGS, Judge.

Bronson, Rice & Lyman,       Attorneys for the Plaintiff.

Charles O'Connor,
Timothy S. Sullivan,
Edward J. McDonald,          Attorneys for the Defendant.

**MEMORANDUM FILED JANUARY 3, 1936**        122 Conn. 228

JENNINGS, J.   This is an action to reduce the assessment of the real property of the plaintiff located in Waterbury, brought under the provisions of **Cumulative Supplement, 1933, Section 328b (now Cumulative Supplement, 1935, Section 375c).**

The property in question is located on North Main Street, about one-quarter mile from the center and about half-way between the business center and another well defined local business center known as North Square.   The land has long been improved but its history as relevant to this case starts when it was nearly a total fire loss in 1924.   At the time of the fire the property consisted of a five-story apartment block

with stores under. The salvage from the fire consisted of the basement and a small part of the walls. The loss was appraised at $98,000. at that time.

The plaintiff, being approached for a loan, estimated the value of the land and of the building soon thereafter constructed at $140,000. and took a mortgage of $85,000. on the property. This was in the form of a construction mortgage. The property was managed by the equity owner without any detailed supervision until 1932 when the plaintiff required reports of income and expense. In 1934 the plaintiff took over the management of the property and in 1935 acquired the title which it now holds. The balance due on the mortgage at this time was $78,000.

The property is known as the Marble Block. It consists of four stores on the first floor with seventeen two-room and sixteen one-room apartments in the three upper stories. Heat and hot water are furnished the tenants. There is no elevator. Steel verandas with fire escape stairways run the full width of the building at the rear. The building is substantially constructed of brick, the first floor being of reinforced concrete and steel. It is in a good state of repair, inside and out. At the request of the parties a fairly complete inspection was made by me.

All of the allegations of the complaint and supplemental complaint are either admitted or found proven except those of paragraph 4. The allegations of this paragraph are denied and form the issue in the case. On this issue the plaintiff has the burden of proof.

These allegations are based on the statute referred to above. This statute reads in part as follows:

"When it shall be claimed . . . . that a tax laid on property was computed on an assessment which, under all the circumstances, was manifestly excessive and could not have been arrived at except by disregarding the provisions of the statutes for determining the valuation of such property, the owner thereof, prior to the payment of such tax, may, in addition to the other remedies provided by law, make application for relief to the superior court of the county in which such town or city is situated . . . . In all such actions, the Superior Court shall have power to grant such relief upon such terms and in such manner and form as shall to justice and equity

appertain, and costs may be taxed at the discretion of the Court." **Cumulative Supplement, 1933, Section 328b.**

This particular provision of our tax legislation does not appear to have been construed by the Supreme Court. One difficulty appears at the outset. The owner at the time of the filing of the list in question was the G. L. D. Realty Company. The tax was paid and the suit brought by the plaintiff. The parties are agreed that the term "owner" as used in the statute is sufficiently broad to justify the bringing of the suit by the plaintiff under these circumstances.

In considering the application of this statute I have followed the procedure outlined in **Underwood Typewriter Company vs. Hartford, 99 Conn. 329, 332,** as there applied to an appeal from the refusal of the board of relief to reduce an assess-ment, an analogous situation. The rule is there stated as follows: "The question first presented to the Superior Court was whether the plaintiff . . . . was aggrieved by the action of the board of relief of the defendant city. . . . . The court found that the valuation was excessive, and that the refusal of the board of relief was erroneous. Consequently the plain-tiff was aggrieved, and had the right to call on the Superior Court to exercise its statutory powers 'to grant such relief as shall to justice and equity appertain'."

It follows that in the case at bar, my first duty is to ascertain whether "the assessment was manifestly excessive and could not have been arrived at except by disregarding the provisions of the statutes for determining the valuation of such property" (complaint paragraph 4.). If I find that the plaintiff has prevailed on this preliminary issue, I must then ascertain the value of the property for the purpose of taxation.

The distinction between the procedure outlined and an assessment **de novo** is important. Not every small variation is to be regarded. **Somers vs. Meriden, 119 Conn. 5, 13.** While the rule is doubtless not as elastic as that applied to motions to set aside jury verdicts, there is some similarity. A judge may agree with a jury on the question of liability yet may think the verdict is a little high or a little low under the evidence. He is not justified for that reason in setting it aside. So here, in order to cause the court to exercise its statutory power, the assessment must be "manifestly excessive" and arrived at in disregard of the statutory rule.

Since I have come to the conclusion that the plaintiff has failed to sustain its burden of proof on this issue, this decides the case. It was fully and ably tried, however, and I shall state, as briefly as circumstances permit, the reasons for my decision.

The assessment attacked was:

| | |
|---|---:|
| Land | $15,000. |
| Apartment Building. | 45,600. |
| Garage | 800. |
| | $61,400. |

Mr. Hutchinson testified for the plaintiff that the land was worth $15,000., so it cannot complain if I devote my attention mainly to the value of the buildings. Certain general considerations will be first stated.

The property is not an idle factory. It is not a single house into which the owner has built his own tastes and personal desires at large expense. It is not a mansion. The fair valuation of properties of this character is obviously a most difficult matter. It was agreed that while, due to peculiar conditions, neither the property in question nor any similar properties had a market value at the assessment date, the property was devoted to its highest use from an income standpoint.

The property was valued by the plaintiff in 1925 at $140,000. and it invested $85,000. in it. The property being in good condition and well adapted to its location, the plaintiff has a heavy burden of proof in contending for a present value of less than half of the first mortgage and less than one-third of the value then placed on it. If the neighborhood had decidedly changed for the worse or the property was badly run down, there might be some support for this contention but in the absence of either of these conditions, this fact alone is almost sufficient to defeat the plaintiff on the issue before me.

In fixing the value of property of this character a reasonabe spread in point of time should be used. **Central Realty Company vs. Board of Review, 110 W. Va. 437, 440; 158 S.E. 537 (cited in Somers vs. Meriden, supra).** The plaintiff relied largely on the difficult conditions surrounding property owners in 1932 and 1933. The defendant clearly showed that con-

ditions in 1934 and subsequently were rapidly improving and would improve, at least for some time to come. There are practically no vacancies at present and the rents received can now be increased by $1000. per year with some probable future additions.

Coming to more particular matters, I have no criticism of the plaintiff's experts, Messrs. Horan and Hutchinson. They appeared to me to be both sincere and competent. For reasons stated later, I prefer the methods of the defendant's experts.

**Messrs. Nuhn and Smith** for the city were also particularly well qualified. As large property owners in this and other parts of the city it would clearly be to their interest as heavy taxpayers to keep assessments at a reasonable figure. In fact Mr. Smith is at present engaged as an expert opposed to the city in another tax appeal. Their method of appraisal by reproduction cost less depreciation and obsolescence was well suited to this property and their calculations were based on long experience and a close examination of the particular property. Arrived at in this way Mr. Nuhn gave the buildings a value of $62,500. and Mr. Smith $56,782. These gentlemen also checked their figures by a capitalization of gross income at 12 % and arrived at a figure far in excess of that placed on the property by the assessors. Evidence of this character is ample defense against any claim that the judgment of the assessors was "manifestly erroneous".

The whole contention of the plaintiff is that the only true method of arriving at a value of property of this kind is by the capitalization of net income. This method is relevant as appears by the Somers case and **Metropolitan Life Insurance Company vs. Bassford, 120 Conn. 384, 387,** but that it is exclusive is denied by the same cases. No very extended argument is required to prove its fallacy as an exclusive method. It would not be claimed as applicable to the idle factory. Taking this particular property, the gross income for 1933 was $6,000. and the aggregate expense, exclusive of depreciation, was $6,197. Capitalizing the net income we get a minus quantity. The property therefore should be assessed at zero although the owner enjoys all the facilities of a modern city including protection, education and sanitation.

The plaintiff endeavors to meet this situation by using a so-called stabilized figure for income and expense. As the number. of items making up these totals is large, the amount of each immediately becomes a matter of opinion. The opinion used by the plaintiff is that of Mr. Horan who is at present employed by the plaintiff as an expert on twenty similar investigations. The margin of difference of opinion may be illustrated by the matter of heat and repairs.

|  | Mr. Smith | Mr. Horan | Mr. Gould |
|---|---|---|---|
| Heat | $427. | $1100. | |
| Repairs | 450. | 1200. | $2055.90 |

The difficulty of arriving at a fair stabilized figure when fair-minded men differ to this extent is apparent and discredits the method.

The final difference of opinion is reached when an attempt is made to fix a fair per cent of net income as a basis of capitalization. I heard no dispute on the following propositions, (1) first mortgages yield between 5% and 6%, (2) the net yield to an equity owner in view of the risk involved should be greater, (3) it seldom has been and almost never is now. For instance, Mr. Gould, secretary of the plaintiff, testified that an analysis of four thousand apartment accounts gave an average yield of 4%. The answer to this argument is that equity owners of real estate have made their profit not, generally, from net rentals but from the general increase in land values, the so-called unearned increment. It has been in the past the probability of this unearned increment producing a satisfactory profit on the often large investments involved that has induced them to take the risk. Capitalization on a net yield of three to four per cent is all that an equity owner can expect as a practical matter at the present time. I have done enough figuring to believe that if fair figures of stabilized income and expense are taken, the result of this method would be a figure in excess of the assessment.

My conclusion is that by no method, including that used by the plaintiff, is the assessment so "manifestly excessive" as to require interference by me.

Judgment for the defendant with costs.