## THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES

vs.

## BENJAMIN SLADE, ET AL.

122 Conn. 451

Superior Court      New Haven County      File #46421

Present:   Hon. ALFRED C. BALDWIN, Judge.

Watrous, Hewitt,
  Gumbart & Corbin,          Attorneys for the Plaintiff.

Slade, Slade & Slade,          Attorneys for the Defendant.

## MEMORANDUM FILED MARCH 23, 1936.

BALDWIN, J. A judgment of strict foreclosure was rendered against these defendants June 7, 1935; the law day was October 8, 1935. The debt was found to be $112,178.32 and an attorney's fee of $50. was allowed. The costs taxed were $71.93; the total being $112,300.25. The relief prayed for included a deficiency judgment.

On October 11, 1935, this court appointed three appraisers, who, on that day, made a report to the Court of having appraised, under oath, the property described in the complaint at $97,000., which report was filed in court on October 16, 1935.

October 17, 1935, the defendant Slade filed a remonstrance to the report of the appraisers and on October 21, 1935 plaintiff filed its motion for a deficiency judgment, the deficiency claimed being $28,325., which was the difference between the above amount of $112,300.25 plus accumulated interest from June 7, 1935, the date of the judgment and October 9, 1935, amounting to $2287.59, plus taxes amounting to $10,737.16, a total of $125.325., and the appraised value of the property of $97,000.

The matter was promptly claimed by plaintiff for short calendar for a hearing on the remonstrance and went over for various reasons. The remonstrance finally came before the Court on January 10, 1936 for a hearing. On January 20, 1936, the Court filed its memorandum directing that an issue be joined upon the remonstrance by demurrer or answer, and on January 22, 1936, the plaintiff filed its answer denying the allegations of the remonstrance.

February 12, 1936, defendant filed his plea to the juris-

diction upon the ground that more than ninety days since the date fixed for redemption having expired the Court therefore is without jurisdiction to render a deficiency judgment under the provisions of **Section 5083 of the General Statutes,** upon which plea issue was finally joined on March 18, 1936.

The matter was heard upon the remonstrance on the short calendar on February 7 and 14, 1936, and briefs were filed by the defendant February 26, and by plaintiff February 27 and a reply brief by defendant February 28, 1936. Issue was not joined upon the Plea to the Jurisdiction until March 18, 1936.

That part of **Section 5083 of the General Statutes** upon which defendant relies in support of his plea to the jurisdiction provides as follows:

"and the court in which such action shall be pending may, by its supplementary judgment, at any time within ninety days after the time limited for redemption has expired, if the appraisal and report shall have been made, render judgment for the plaintiff for the difference between such appraisal and the plaintiff's claim."

Under the provision of the statute the defendants claim that the word "may" as used therein shall be construed to mean "must" and therefore the provision is one of limitation of time—a ninety-day period after the time limited for redemption has expired, within which only a deficiency judgment may be rendered.

If this is the construction to be applied a deficiency judgment could be prevented almost invariably if not invariably and the statute rendered nugatory. Assume a case in which an appraisal is made late within the ten-day period but the report of the appraisers shall not have been made for some period of time (which the statute it would appear contemplates the possibility of) and then a remonstrance be filed and pleadings thereto had exhausting time, the remonstrance being sustained after dilatory pleadings and hearings and consideration by the Court had exhausted the ninety-day period, and an appeal to the Supreme Court resulting in error, could it be said that the Court could not render a deficiency judgment?

In the instant case it appears that although the remonstrance was promtly filed, thereafter for a time negotiations

were under consideration at the instance of the remonstrant, and thereafter he was engaged in the trial of a number of cases being tried together before a jury in Danbury at a session of the court over which I was presiding which trial began December 3, 1935, and continued until January 6, 1936, without interruption, excepting for very brief periods which provided no opportunity for this matter to be heard, and upon January 6, 1936, the ninety-day period expired and thereafter various pleadings were had as on file. Innumerable conditions could be detailed under which the object of this statute could be defeated if it is to be construed as claimed by the remonstrant. This could not have been the intention of the Legislature. The statute is permissive and not mandatory except as to the period of time within which the appraisal is to be made. The filing of the remonstrance and the subsequent pleadings and events tolled the running of the statute.

The plea to the jurisdiction is therefore overruled.

The remonstrance attacks the report of the appraisers in that the appraisal made was made as a result of the application of a mistaken basis for the purpose of determining the value of the property and as a result the "fair market value" was not determined.

The purpose of the appraisal provided for is to determine the actual value of the property.

Concerning the provision of the statute relating to the appraisal the Supreme Court has said:

"The plain object of these provisions is to require a mortgage creditor, who appropriates the property in part payment only of his debt, to apply the actual value of the security to the debt before collecting any claimed deficiency." **Staples vs. Hendrick, 89 Conn. 100, 103; 93 Atl. 5. Peoples Holding Co. vs. Bray, 118 Conn. 568, 571; 173 Atl. 875.**

And the Court refers to this as a

"provision for fixing the actual value of the property as of the date of the foreclosure, and for making that valuation a conclusive basis for determining the amount of any claimed deficiency." **Staples vs. Hendricks, supra. Peoples Holding Co. vs. Bray, supra.**

It is to be noted that the Court in speaking of the value to be fixed refers to it as "actual value" and not as "fair market value". This most certainly should be found since it is to be the basis for the determination of a judgment for the balance due ,if any, of the mortgage debt upon the extinguishment of the mortgagor's right or interest in the property foreclosed.

Fair market value is a fluctuating quality, influenced by many and varying conditions while actual value is a much more stable quality and not as susceptible to fluctuation from the influence of varying conditions. The actual value of a given piece of land with a building thereon depends, it would seem, upon size and location of the lot, adaptability of the type of building for use in the given location, its size, the quality of materials and workmanship employed in construction, age of the building, condition of repair, the improvements therein and to some extent the market for the property. These conditions seem to me to be basic in determining actual value. Other conditions no doubt exist to which consideration should be given, but these it would seem are essential. Fair market value is one of the elements to which consideration should be given in determining actual value; it is only an element to consider in finding actual value, it is not actual value.

Market value of any given property is influenced largely by the market for such property and most decidedly so by economic conditions existing at the time. In discussing value of property for taxation purposes the Supreme Court of the United States recently said:

"Judicial notice must be taken of the great collapse in 1929 of values of all property and that the depression, then commenced, progressively became greater." **Great Northern Ry. Co. vs. Weeks, (Advance Opinions) U. S. Supreme Court Reporter, Vol. 56, No. 7, page 426, Issue of February 15, 1936.**

The great shrinkage in real estate values during this depression is of common knowledge. This great shrinkage is in market values. Actual values did not suffer such a great change as did market values. To some extent actual values, no doubt, have been affected, but actual values are more real, substantial and stable qualities and the market values are

more ephemeral or unstable.

"The full and true value of the property is the amount that the owner would be entitled to receive as just compensation upon a taking of that property by the State or the United States in the execution of the power of eminent domain. That value is the equivalent of the property, in money paid at the time of the taking." **Olson vs. United States, 292 U.S. 246, 254, 54 S. Ct. 704, 78 L. Ed. 1236. Great Northern Ry. Co. vs. Weeks, Supra.**

The full and true value and actual value are identical.

"The principles governing the ascertainment of value for the purposes of taxation are the same as those that control in condemnation cases, confiscation cases, and generally in controversies involving the ascertainment of just compensation." **West vs. Chesapeake & P. Tel. Co., 295 U.S. 662, 671, 55 S.Ct. 894, 79 L. Ed. 1640. Great Northern Ry Co. vs. Weeks, Supra.**

Likewise, the same principle should apply in determining the value of property applied on the mortgage debt when a deficiency judgment is being sought.

The mortgage here foreclosed was given to secure the payment of a promissory note for $100,000. both of which were executed February 24, 1927, a little over eight years and seven months prior to the law day. The property, subject to the mortgage, is located upon the westerly side of Church Street in New Haven, and in that section which may be said to be the heart of the City. The lot has a frontage on Church Street of twenty-five feet and a depth of one hundred and thirty-five feet. It is occupied by a building, the front portion of which is of six stories, the remainder being of five stories, and includes 221,175 cubic feet. In 1923, between $75,000. and $80,000. was spent in improvements which included an entire new front, a fire proof elevator shaft with a modern passenger elevator and new plumbing and heating throughout. The ground or first floor accommodates a large room capable of use as a store or restaurant while the second floor includes a front room well located for use as a store or office, a hotel lobby, an office and rooms for guests. The other floors are designed for use for hotel guests, there being in the building forty-two of such rooms.

These rooms have running water and there are four bath rooms on a floor used for the accommodation of hotel guests. The building is unoccupied but is in a fairly good condition of repair.

Replacement cost at the time of the appraisal at forty cents per cubic foot would be $88,470. which would be a fair re-placement cost less a depreciation of twenty-four percent for a period of twelve years amounting to $21,232.80, which would be a fair allowance for depreciation and which would result in a valuation of the building, based upon replacement value less depreciation, of $67,237.20.

The appraisers appointed by the Court found the fair mar-ket value of the land to be at the time of the appraisal $75,000.

One of these appraisers, in arriving at the valuation which they reported, based his conclusion upon the probable gross rental as of October, 1935, and "Figured the property could probably be rented at this time, or at that time ,at the valua-tion of eight of ten thousand dollars a year". Answering again, he said he figured, "The income could possibly be made to pay between eight and ten thousand dollars a year". And that was as of October, 1935. He agreed that if the property yielded forty percent more, or if yielding fourteen thousand dollars a year as against ten thousand he would add $60,000. to the valuation he found.

This appraiser did not attempt to learn and did not take into consideration the earnings of the property over any period of time prior to the appraisal and did not consider replacement value. This appraiser testified rentals had decreased in five years about fifty to sixty percent.

This appraiser testified, "The elements I took into consid-eration are the size of the ground floor in comparison with the ground floor properties—stores—in that same block, and the income from a great many of the stores in that block, to-gether with the possible rental value above the ground floor. Also taking into consideration that there would have to be some money spent on the—second floor—on the floor above the ground floor, before it could be rented."

As to how much money would have to be spent, he said, "Why, I didn't go into it too deeply. I would have to just

guess about what might be called for. Maybe nothing would be used."

The rentals this appraiser considered were rentals at the time of the appraisal. The stores in the vicinity considered were of no comparable size or dimensions with the store or room in the building in question.

Another appraiser arrived at the fair market value of $97,000. by a consideration of replacement value, and again by consideration of rental value as of October, 1935.

Concerning replacement value he testified there was more than 200,000 cubic feet in the building, that he computed replacement value at forty cents a cubic foot. This would result in a cost of $80,000. He then deducted seventy percent for depreciation, or $56,000. This would leave a net replacement value of $24,000. Yet he testified the replacement value of the building was $20,000.

It is to be remembered that this building within from twelve to thirteen years had spent upon it for improvements of substantial character costing from $75,000. to $80,000. and in less than nine years was found, with the land on which it stands, to be of sufficient security to warrant a loan of $100,000.

The depreciation which this appraiser applied, in view of all of the evidence, was excessive and leads to inequitable and unjust result.

Upon the rental basis this appraiser considered a gross rental for the entire building of $600. a month or $7,200. per year, this rental based upon rentals as of October, 1935. This appraiser testified that rentals as of October, 1935 were not a great deal less than under normal conditions, and he would not change his opinion of the value if the rental of the store on the ground floor in 1928 was $7,200. and if the hotel proper in 1928 yielded $6,000. a year.

This appraiser thought rentals had decreased between 1929 and 1935 around forty percent. He estimated fixed costs such as taxes, insurance, outside repairs and vacancies at $3,400. a year.

The other appraiser considered estimated rentals as of October, 1935 and replacement value. The total estimated rental

for the building being $7,800. Assuming the rentals to be $14,000. a year he would nearly double his valuation of the building.

Upon replacement value he figured upon 200,000 cubic feet at forty cents a cubic foot less depreciation of "sixty percent or $40,000.", and $10,000. for repairs.

The building includes 221,175 cubic feet; replacement cost at forty cents a cubic foot less depreciation of $40,000. plus $10,000. for repairs would still leave the replacement value upon this appraiser's figures (except as to cubic feet, which he estimated) at $38,470., which, plus the value of the land upon which all these appraisers agreed as of October, 1935 was $75,000., would result in a total valuation of $113,470.

All of these appraisers used October, 1935 as the basis of time in fixing the value of the property. Values at this time were depressed values; they were influenced by the depression resulting from the general economic condition throughout the world, but more particularly in this country, and the courts have given recognition to that fact. **Great Northern Ry. Co. vs. Weeks, Supra.**

Our own Supreme Court in referring to these conditions has said:

"It (the court )may properly consider economic conditions which render it difficult to dispose of property and fix a law day which will give the owner of the equity a reasonable opportunity to dispose of it without jeopardizing the right of the plaintiff to the full payment of the mortgage debt." **Metropolitan Life Ins. Co. vs. Bassford, 120 Conn. 384 at page 389,** citing **Brand vs. Wilson, 120 Conn. 211, 180 Atl. 293.**

So also should an appraisal be made, having consideration of the economic conditions and the influence therefrom upon rentals. They should not be taken at a date when at their high peak, nor at a date when at their low, since neither would lead to actual value. They should be taken over a period of time or at a time when recognized as normal, as for example, 1926, which year is recognized by the Government as one of normal values.

"Was it the purpose of the statute to jeopardize the

machinery of (the) municipality, during a depression, or was it enacted to cover ordinary conditions existing over a period of years? To ask the question is to answer it. Values of real estate and fixtures thereon are more or less constant over a period of years. . . . . While the assessment is to be made as of a certain date; the value of the property is established over a period of years." **Somers vs. Meriden, 119 Conn. 9, 10, 174 Atl. 184. Central Realty Co. vs. Board of Review, 110 W. Va. 437, 440, 158 S.E. 537.**

The appraisers failed to give consideration to many relevant elements which appear to me to be essential in determining the value of this property.

"If an expert witness includes in his estimate of value elements not properly to be considered, this circumstance is to be weighed by the trier and may properly lead him to disregard the testimony or to regard the estimate given as too high; on the other hand, if the witness fails to include relevant circumstances affecting value, the trier may conclude that his estimate is too low." **Appeal of Cohen, 117 Conn. 75 at pages 85 and 86, 166 Atl. 747. Johnson vs. Chicago B. & N. R. Co., 37 Minn. 519, 521, 39 N.W. 438.**

The appraisers found the "fair market value" as of October 11, 1935, which was not the actual value contemplated by the statute.

For the several reasons the remonstrance is sustained and a deficiency judgment is denied.