The Attorney General is in receipt of your request for an official opinion wherein you ask, in effect, the following questions: 1. Define the term "use value" as employed in the context of ad valorem real property tax assessment. 2. May the "use value" of a piece of real property be determined by first finding the fair cash value of the property based upon its present use and then deducting a percentage from the value of the property for purposes of the assessment of ad valorem taxes? 3. If so, can the percentage deducted be different for different counties? 4. Is there constitutional justification for a "composite ratio," which is the average of the assessment percentages for the classes of property, and if so, how is it to be calculated and applied in the assessment of ad valorem taxes? The assessment of property for ad valorem tax purposes is regulated by the Constitution and by vitalizing legislation. Okla. Const., Article X, Section8; 68 O.S. 2427 [68-2427] and 68 O.S. 2435 [68-2435] (1979). Reduced to its barest essentials, assessment, the process by which the assessed valuation of property for ad valorem tax purposes is derived, involves two steps. First, property is valued and second, the application of an assessment percentage to that value which may not exceed 35% of the value. Okla. Const., Article X, Section 8; Cantrell v. Sanders, Okl.,610 P.2d 227 (1980). Prior to its amendment in 1972, Okla. Const., Article X, Section 8, provided in pertinent part: "All property which may be taxed ad valorem shall be assessed for taxation at its fair cash value, estimated at the price it would bring at a fair voluntary sale, except real property and tangible personal property shall not be assessed for taxation at more than thirty-five percent (35%) of its fair cash value, estimated at the price it would bring at a fair voluntary sale; . . ." This language has been retained, without change, as the first sentence of the 1972 amended Article X, Section 8. This section has been interpreted to require the valuation of property at its "fair cash value", and to limit the assessment percentage to 35%. The second sentence of amended Article X, Section 8, incorporated a new qualifying factor in determining property value, the actual use of the property. The second sentence of Article X, Section 8, states: "Provided, however, that no real property shall be assessed for ad valorem taxation at a value greater than thirty-five percent (35%) of its fair cash value for the highest and best use for which such property was actually used, or was previously classified for use, during the calendar year next preceding the first day of January on which the assessment is made." Your first question asks for a definition of the term "use value" in the context of ad valorem real property tax assessment. "Use value" is not a term having a fixed legal definition in the area of ad valorem taxation. The term "use value" is found in neither Article X, Section 8 nor 68 O.S. 2427 [68-2427], nor does it appear in any other constitutional or statutory provision regulating ad valorem real property assessment. Recently, the Oklahoma Supreme Court employed the words "use value" in the process of discussing the function of the second sentence of Article X, Section 8. Cantrell v. Sanders, supra. Earlier in its opinion, the Court had discussed the general principle that all property was to be valued at its fair cash value, subject to certain exceptions, the first of these being the 35% qualifier. Thereafter, in discussing the second sentence of Okla. Const., Article X, Section 8, the Court said: "The second exception is that the assessment of real property, in addition to being limited to 35% of its value, is further limited to 35% of its use value as opposed to its market value. This sentence does not provide, or even intimate, that different properties of equal use values can be saddled with unequal tax burdens. Rather, it provides that all real property must be valued at its use value. In 1972 this was a new notion in Oklahoma ad valorem taxation. Previously, all assessments had been made on the basis of market value. The change was proposed by the Legislature and adopted by the People to protect land located in prime locations but used for agricultural purposes from grossly inflated valuations due to the proximity of metropolitan areas, industrial areas, highways, lake front locations, or the like. Nothing in the language of the change indicates any purpose of allocating tax burdens." Emphasis by the Court. Evidently, the Court was using the term "use value" as an easy reference to the process of valuing property consistent with the limitations of the second sentence of Article X, Section 8. Thus, rather than repeatedly restating the phrase "fair cash value for the highest and best use for which such property was actually used, or was previously classified for use, during the calendar year next preceding the first day of January on which the assessment is made," the Court simply said "use value". "Use value" then, as the term was utilized by the State Supreme Court in Cantrell v. Sanders, supra, is synonymous with the limiting language of the second sentence of Article X, Section 8. To be able to answer your second and third questions, it is necessary to understand the constituent elements which comprise the Article X, Section 8 limitation for which "use value" is a shorthand reference. Prior to 1972, all real property was valued at its "fair cash value", which had been construed by decisions of the Supreme Court to be the property's "market value". Bliss Hotel Company v. Thompson, Okl., 378 P.2d 319 (1962). The market value of the property, and thus its fair cash value, is the price such property would bring at a free and voluntary sale between a purchaser willing but not obligated to buy and an owner willing but not obligated to sell. Bliss Hotel Company v. Thompson, supra. The 1972 amendment to Article X, Section 8 requires the valuation of the property at its fair cash value for the highest and best use for which such property is actually used. It is important to note that the concept of "fair cash value" was retained in the amendment and expressly related to the concept of valuation in reference to use. It is only appropriate to assume that the incorporation of the term "fair cash value" into the amended version of Article X, Section 8 was for the purpose of retaining that settled body of law as a valuation standard. Assessors may properly consider numerous factors bearing upon the fair cash value of real property. No one factor, however, may be considered to predominate to the exclusion of other pertinent factors. On several occasions, the Oklahoma Supreme Court has expressly held that the income generating potential of property is a factor, but not a controlling factor nor even necessarily the most important factor in determining fair cash value. First National Bank Trust Company of Tulsa v. Rowe, 195 Okl. 219, 157 P.2d 172 (1945) . The concept of "market value" as interpreted by the Supreme Court requires consideration of all factors having a material bearing on the value of real property. The second sentence of Article X, Section 8 removes from consideration some of the factors contributing to real property's "market value". The limiting language eliminates all factors having a material impact on value which do not relate to the highest and best use for which the property is actually used. As illustrated by the Court in the previously quoted passage from Cantrell v. Sanders, supra, the assessor may not consider as a factor bearing upon the value of real property, the increased value the property would have if used for some other purpose than for which it is actually used. It does not follow, however, that the same property may lawfully be valued at something less than its fair cash value as it is actually used or was previously used during the calendar year next preceding the assessment. Thus, the classic judicial definition of market value employed by the Supreme Court in Bliss Hotel Company v. Thompson, supra, has been constitutionally modified to, in effect, state, "the price real property would bring at a free and voluntary sale between a purchaser willing but not obligated to buy and an owner willing but not obligated to sell, where the real property is being purchased for the use as it is presently being used." After the State Supreme Court handed down its decision in Cantrell v. Sanders, supra, the Legislature passed Senate Concurrent Resolution 54, Second Regular Session, Thirty-Seventh Legislature. SCR 54 defined "actual use value" to mean "the value a parcel of property would have, if it were limited to its actual use and no speculative value was considered." Emphasis added. A concurrent resolution does not have the force and effect of law but it is an expression of legislative intent which should be given consideration in the formulation of administrative policy. Intended to be removed from consideration in valuation was "speculation" in properties of a certain use for the same use. A proper valuation must consider ordinary conditions existing over a period of time. Sinclair-Prairie Oil Co. v. State, 169 Okl. 334,37 P.2d 298 (1934). One can find no legal authority to permit reduction of the value of property by an arbitrary percentage. To reduce property values by a percentage supposedly reflective of speculation is inconsistent with statutorily mandated revaluation. 68 O.S. 2481.1 [68-2481.1] — 68 O.S. 2481.11 [68-2481.11] (1971), as amended. More importantly, the value resulting from a percentile reduction to remove speculation is necessarily valuation at something less than such property's "fair cash value" as actually used. In answer to your second question, the "use value" of a piece of real property may not be determined by first finding the fair cash value of the property based upon its present use and then deducting a percentage of value. Our answer to your second question makes it unnecessary to answer your third question. Your fourth question makes reference to a "composite ratio". As with the term "use value", the term "composite ratio" has no definition in constitutional or statutory law. The term is used to describe the percentage derived by averaging the assessment ratios of the various classes of real property in a particular county. The Tax Commission has a statutory duty to "render its findings as to the adjustment and equalization of the valuation of real and personal property of the several counties of the State . . . ." 68 O.S. 2462 [68-2462](a) (1971). The Commission accomplishes this task by compiling ratio studies. The ratio studies are annual reports, county-by-county, and property-classification-by-property-classification, of the assessment ratios. An assessment ratio is the product of dividing assessed valuation of a class of property by the full value of the same class of property. This gives the percentage of full value used to determine assessed value, the second step in the assessment process. See Cantrell v. Sanders, supra. Prior to March 25, 1980, a different assessment percentage (assessment ratio) was commonly utilized for each different classification of real property in the county. The "composite ratio" is a per county average of these assessment percentages of the various real property classifications. The State Board of Equalization used the "composite ratio" as a basis for comparison when equalizing assessment rates as mandated by the Constitution and Order of the State Supreme Court. State ex rel. Poulos v. State Board of Equalization, Okl.,552 P.2d 1134 (1975), supplemented 552 P.2d 1138 (1976). Recently, the Oklahoma State Supreme Court spoke directly to the matter of assessment percentages as applied to various classes of real property. The Court in Cantrell v. Sanders, supra, specifically held that the same assessment percentage must be applied to all real property regardless of classification. In disposing of the argument that the 1972 amendment to the Okla. Const., Article X, Section 8, permitted different assessment percentages for different classifications of real property, the Court in Cantrell said: ". . . it is clear that the only purpose of the amendment Article X, Section 8 was to change our method of valuing real property. The amendment did not and was not intended to create multiple 'classes of subjects' out of all real property for the purpose of allocating unequal tax burdens. Thus, real property remains one 'class of subjects' and the mandate of Article X, Section 5 that taxes be 'uniform upon the same class of subjects' is not affected." Since all real property of the county is but one class for purposes of applying a single assessment percentage, there is no need to average assessment percentages to ascertain the countrywide assessment ratio. There cannot be, consistent with the Constitution as construed in Cantrell v. Sanders, supra, more than one assessment percentage for real property in any one county. Since there is no need to average assessment percentage, there can be no "composite ratio." Therefore, it is the official Opinion of the Attorney General that your questions be answered as follows: 1. "Use value" as employed in the context of ad valorem real property tax assessment means "fair cash value of real property for the highest and best use for which such property was actually used, or was previously classified for use, during the calendar year next preceding the first day of January on which the assessment is made." 2. The "use value" of a piece of real property may not be determined by first finding the fair cash value of the property based upon its present use and then deducting a percentage of value. 3. The Oklahoma Constitution as interpreted by the State Supreme Court in Cantrell v. Sanders, Okl., 610 P.2d 227
(1980), does not permit different assessment percentages for different classes of real property; thus, there is no longer any need or justification for utilizing a "composite ratio" which is an average of different assessment percentages for different classes of real property. (JOHN C. PERCIVAL) (ksg) JAN ERIC CARTWRIGHT ATTORNEY GENERAL OF OKLAHOMA JOHN C. PERCIVAL ASSISTANT ATTORNEY GENERAL